By the Court,

Hoyt, J.
It appears by the insolvent laws of Massachusetts, which are set out in the complaint, among other things, that all debts due and payable by the insolvent debtor at the time of the first publication of the notice of the issuing of the warrant therein provided for, may be proved and allowed against- his estate, and all debts then absolutely due, though not payable until afterwards, may be proved and allowed ; and in case the debtor shall be liable in consequence of having made or executed any bill of exchange or promissory note before the first publication of said notice, or in consequence of the payment by any party to any bill or note of the whole or any part of the money secured thereby, or of the payment of any sum by any sureties of the debtor in any contract whatsoever, although such payment in either case be made after such first publication, provided it be made before the first dividend, such debt shall be considered for all the purposes of said acts, as con *561 tracted at the time when the said bill, note, or other contract shall have been so made or indorsed, and may be proved or allowed as if said debt had been due and payable by said debtor before the said first publication. The act further declares that, upon the debtor complying with its provisions as therein specified, the judge shall grant a certificate, and the debtor shall thereupon be absolutely and wholly discharged from all his debts, (except debts created by defalcation as a public officer, &c.) which shall at any time be actually proved against his estate, assigned as therein provided, from all debts (except, &c.) which are provable under said acts, and which are founded upon any contract made by him after the act of 1838 went into operation, if made or to be performed within the commonwealth of Massachusetts, and from all debts which are provable as aforesaid, (except, <fec.) which are founded upon any contract made by him after the said act of 1838 went into operation, and due to any persons who shall be residents within the commonwealth of Massachusetts at the time of the first publication of the notice of the issuing of said warrant. That it is provided in and by said acts, that no discharge under said acts shall release or discharge any person who may be liable for the same debt, as a partner, joint contractor, indorser, surety or otherwise, for or with the debtor.
It will be seen by an examination of these acts, that the certificate of discharge, by the terms of the acts, is designed to discharge the debtor as follows : 1st. From all debts which shall in fact be proved. 2d. From all debts which are provable under said acts, and which are founded upon any contract made by him within the state of Massachusetts, or to be performed therein. 3d. From all debts which are provable and founded upon any contract due to any person resident within the state at the time of the first publication of the notice of the issuing of the warrant.
It appears that neither the plaintiff or defendant was a resident of the state of Massachusetts at the time of the making or acceptance of these bills of exchange, or at any time since. It is claimed by the defendant that these bills of exchange were *562 drawn on and accepted by Gibson, at Boston, and were payable there, and that the acceptor would be discharged by his certificate from these debts, whether they were proved for the purpose of a dividend or not. The complaint alledges that Gibson was a resident of Boston, and that the bills were drawn upon, presented to, and accepted by him at Boston. It appears, therefore, that the acceptor’s contract was made in the state of Massachusetts. The provisions of the acts of that state as to what debts shall be discharged, are in substance the same as is provided by our own insolvent laws; (2 R. S. 24, § 30;) and under that act, in a case where the debtor resided and the contract was made in this state, and to be executed here, it was held that a discharge of the debtor, under such law, was a discharge of the debtor from such debt, although the creditor was a resident of Pennsylvania, and though he did not petition for the debtor’s discharge, or accept of a dividend out of his estate. (Parkinson v. Scoville, 19 Wend. 150.) In the case of Sherill v. Hopkins, (1 Cowen, 103,) the bond was made in this state, though neither the obligor or the obligee were residents of this state. The court, after adverting to several cases in our own state, (9 John. 325; 17 Id. 168; 19 Id. 153; 16 Id. 223; 3 Caines, 154,) and to 4 Wheat. 129, 209; 13 Mass. Rep. 16, and 1 East, 6, say “ that in all these cases considerable importance seems to be attached to the circumstance, that one or both of the parties were inhabitants of the state or country where the contract was made; but that all these cases stand upon a principle entirely independent of that circumstance. It is that of the lex loci contractus, that the law of the place where the contract is made must govern, whether the parties to the contract are inhabitants of that place or' not. That the rule is not founded upon the allegiance due from citizens or subjects to their respective governments, but upon the presumption of law that parties to a contract are conusant of the laws of the country where the contract is made; and that it is made with reference to those laws, and that they, therefore, form a part of the contract. That this is the principle of the rule, is evident from the exceptions to it. For where it appears that the place of-performance is *563 different from the place of making the contract, then it is to be construed according to the law of the place where it is to be performed, though neither of the parties reside or owe allegiance there.” The court held in that case, that the bond having been made in this state, and it not appearing upon its face that it was payable elsewhere, was to be construed according to the laws of this state; and having been made after the passage of the law under which the defendant was discharged, such discharge was no violation of the contract, and was therefore valid. It seems to me this case was put upon the proper grounds. In the case now under consideration, Gibson’s contract was made in Massachusetts, and I think the true construction of his contract, when read in connection with the insolvent laws of that state, would be that if Gibson should become insolvent and obtain his discharge as an insolvent debtor, under the laws of Massachusetts, it should operate as a discharge of his liability upon such bills of exchange, without reference to the residence of the holder thereof. And as an original question, or if at liberty to follow the cases cited, I think we ought so to hold, whether the creditor proved the debt and accepted a dividend or not. But the supreme court of the United States, in the case of Ogden v. Saunders, (12 Wheat. 213,) where a bill of exchange was drawn by one Jordon, of Kentucky, on Ogden, in New-York, who was a citizen of, and accepted the bill in the city of New-York, and who was afterwards discharged as an insolvent debtor, under the insolvent laws of this state, held that such discharge did not operate to discharge him from such debt which was due to a citizen of another state, though the contract was made in New-York. And in delivering the opinion of the court, Justice Johnson laid down the following- propositions, as having been determined by the court: 1st. That the power given to the United States to pass bankrupt laws is not exclusive. 2d. That the fair and ordinary exercise of that power, by the states, does not necessarily involve a violation of the obligation of contracts made after the passage of the law. 3d. But when in the exercise of that power, the states pass beyond their own limits and the rights of their own citizens, and act upon the rights of citi *564 zens of other states, there arises a conflict of sovereign power and a collision with the judicial powers granted to the United States, which renders the exercise of such a power incompatible with the rights of other states, and with the constitution of the United States.
This case having been decided by a vote of four of the judges against three, and those concurring with Justice Johnson in the last proposition, being those who were in the minority upon the other questions in the case, it was thought the questions might not be deemed definitely settled; and in the subsequent case of Boyle v. Zacharie & Turner, (6 Pet. 348,) Mr. Wirt, in behalf of the plaintiff, inquired of the court whether the opinion of Mr. Justice Johnson, delivered in the case of Ogden v. Saunders, (12 Wheat. 213,) was adopted by the other judges who concurred in the judgment in that case. Chief Justice Marshall said, “ the judges who were in the minority of the court upon the general question as to the constitutionality of state insolvent laws, concurred in the opinion of Justice Johnson in the case of Ogden v. Saunders. That opinion is therefore to be deemed the opinion of the other judges who assented to that judgment. Whatever principles are established in that opinion are considered no longer open for controversy, but the settled law of the court.” The court afterwards said that the effect of an insolvent discharge was at rest, so far as it is covered by the antecedent decisions made by that court. (6 Peters, 642.)
The supreme court of the United States having thus declared that a state insolvent law, which professes to discharge an insolvent from a debt due to a citizen of another state, though the contract should be made in the state where the discharge is granted, if the creditor does not become a party to the proceedings, is in conflict with the constitution of the United States, such decision is binding upon state courts, and it is their duty to respect it. And these- decisions have been followed by the courts of Massachusetts in giving a construction to the insolvent laws of that state. In the case of Fisher v. Foster, (10 Metc. 597,) a bill of exchange was drawn by a citizen of the state of Maine in favor of another citizen of that state, upon a citizen of *565 Massachusetts, who accepted the same. It was held that a discharge of the acceptor, under the insolvent laws of Massachusetts, was not a bar to an action against him by the payee, who had not proved his claim thereon against the insolvent’s estate. And the same doctrine is recognized by the court of errors in Van Hook v. Whitlock, (26 Wend. 53,) as having been settled, though the judge who delivered the opinion of the court in that case, does not regard it as decided that it would not be a bar when the party is sued in the state where the discharge is granted. But it was so held in the case of Fisher v. Foster, (supra.) The case of Parkinson v. Scoville, (19 Wend. 150,) before cited, arose on a motion to set aside an execution, and appears to have been decided solely upon the reading of our statute, and without any reference to or examination of the cases already referred to by me. And although, as an original question, I should be disposed to adopt the principles decided in the cases in our own courts, we think we are bound to follow the decisions of the United States court so far as regards the constitutionality of state insolvent laws, and their effect upon citizens of other states, and must hold that the discharge in this case would have been no bar to an action by the defendant as holder, or the plaintiff as drawer, of these bills of exchange, if the defendant had not voluntarily proved its demand and accepted, or entitled itself to, a dividend out of the estate of the acceptor.
That the proving of these bills by the defendant, and accepting a dividend .from the acceptor’s estate, under the proceedings for his discharge as an insolvent debtor, renders the defendant a party to those proceedings, and discharges the liability of the acceptor upon those bills, although he would not have been discharged if such proofs had not been made, is clearly settled by the case of Clay v. Smith, (3 Pet. 411.) It therefore follows that the defendant, by making such proof and becoming a party to such proceedings, has precluded itself and any person who may derive title to said bills, from maintaining any action thereon against the acceptor, and has deprived the plaintiff of any right of action or remedy over against the acceptor if he should pay, or be compelled to pay or take up such bills as the drawer thereof. And *566 which right of action would otherwise have remained unimpaired. This clearly operates, or may operate, to the prejudice or injury of the plaintiff, because he is deprived of the right to collect such bills out of the future acquisitions of the acceptor. (3 Brown's Ch. R. 1. 5 Barb. S. C. R. 520. 18 Ves. 26. 7 Hill, 250. 2 Ves. 540.) We think, therefore, that the plaintiff, by his complaint, shows that he had a good defense to the bills of exchange upon which said judgment was obtained, and that he has such defense to the remaining bills of exchange now in suit.
But it is urged as one ground of demurrer that the plaintiff may avail himself as fully and perfectly of the discharge of Gibson, by way of defense, to the suit now pending, and that the complaint does not show or state that the defendant is seeking or endeavoring or threatening to enforce the judgment against the plaintiff, and that the plaintiff does not show any valid or sufficient grounds for granting to him the relief asked for in the complaint, either as to said judgment or as to said bills of exchange.
This is probably equivalent to alledging that the facts set forth in the complaint do not constitute a cause of action, for the reasons stated in the demurrer. If we are right in the conclusion at which we have arrived, that the proving of the indebtedness upon these bills by the defendant, under the insolvent proceedings, discharges the plaintiff from all liability as drawer of said bills of exchange, we are unable to see- how the plaintiff shows himself entitled to the relief he asks against the judgment. It appears from the complaint that the debt was proved, and Gibson’s discharge granted, long before the judgment against the plaintiff was obtained. This would have been a good defense to the plaintiff’s claim for which such judgment was obtained, and should have been set up and proved in that action. If that suit was commenced before such discharge was granted, there was ample time after such discharge and before the recovery of the judgment, to have interposed a plea in bar of the further prosecution of that action; as some fifteen months elapsed after the discharge was granted before the judgment was obtained, and the complaint does not show any reason or excuse why such *567 defense was not set up in that action. There is no allegation of any fraud in the recovery of said judgment, or that the plaintiff was not, before said judgment was obtained, fully aware of the existence of the facts which it is now claimed constitute such defense.
If a party has a defense like this to an action, and omits to set it up, and suffers judgment to pass against him, he is not entitled to relief against such judgment, unless it has been procured by some fraud, or he did not know of the existence of the facts constituting the defense, or has unavoidably or inadvertently omitted to set them up. And even then it may well be doubted whether the remedy of the party, when the judgment has been obtained in a court of record, which can exercise an equitable jurisdiction over its own judgments, and has power to relieve a party on account of any such fraud, mistake or inadvertence, should not be by a motion in such action, to be relieved from the judgment and permitted to interpose such defense and try the cause upon its merits. But this question it is not now necessary or proper to decide, as it is possible the plaintiff may be able to make a case which may entitle him to pursue his remedy by action. But he has not in his complaint shown any facts which would authorize the setting aside of the judgment, either upon motion or by an action to be relieved against such judgment. Yet as the demurrer in this case is to the whole complaint, the defendant is not entitled to judgment if the plaintiff has shown a good cause of action for any of the matters set up in his complaint. It therefore becomes necessary to examine and determine whether the plaintiff has shown a right to maintain an action to be relieved from the bills of exchange, for the recovery of which an action is now pending. We think a similar difficulty exists as to this branch of the case. Ko issue has yet been joined in that action, and the plaintiff in this suit has the right to hasten the proceedings in the other cause, and of compelling the plaintiff therein to proceed; and he also has a right to interpose as a defense in that suit, the same matters which he alledges in this suit entitles him to the relief demanded. There are no facts alledged in the complaint *568 to show that any injury can accrue to the plaintiff in awaiting the determination of the other action now pending.
It may he the plaintiff in this action may have evidence of the facts which he sets up, which may be lost, or there may be danger of losing, by delay in prosecuting the other; or in case the plaintiff therein should omit further to prosecute that suit; but no such or any other allegation or reason is shown for coming in and asking affirmative relief against the prosecution of said bills of exchange, instead of interposing such matters as a defense thereto.
Under the former system of law and equity, a party could set up such matters as a defense to an action at law upon the bills of exchange, but he could not bring an action at law for the relief demanded in this case. If he sought such a remedy and relief as the plaintiff asks in this case, it could only be obtained in a court of equity, and then he was required to show good and sufficient reasons, rendering it necessary to come into such court for affirmative relief, instead of interposing the matters as a defense at law. (Morse v. Hovey, 9 Paige, 198. Perine v. Striker, 7 Id. 598.)
Courts of equity entertained jurisdiction to compel the surrender of bills of exchange and promissory notes, which were negotiable and which might be transferred to an innocent holder before due, when it was shown that the party had a good defense to such bill or note, but of which defense he might be deprived by such transfer. But in the present case the bills of exchange have long since been due, and they can not be transferred by the defendant so as to give the holder any greater rights than the defendant now has. Some other special reason would therefore be required to be shown to give a court of equity jurisdiction to grant such relief, as is asked in this case. And although courts of law and equity are now blended, and a uniform system of pleading has been, or attempted to be, adopted for the two courts ; still, I think that no new rights of action have been conferred thereby ; or in other words, a party has now no right to commence an action against one holding a bill or note against him, to determine his right thereto, or to compel the cancella *569 tion. thereof, where such right did not exist before the new system of pleading was adopted, or before courts of law and equity were blended together and held by the same judges.
[Orleans General Term,
February 9, 1852.
Taggart, Marvin and Hoyt, Justices.]
We are clearly of the opinion that the plaintiff has not, by his complaint, shown a right to maintain an action for affirmative relief, either against the judgment or the bills of exchange, now in Suit; and that the matters alledged are, or might have been, a good defense to all of the bills of exchange mentioned in the complaint. The defendant is, therefore, entitled to judgment upon the demurrer. But as the plaintiff may, perhaps, by an amendment, be able to obviate the difficulties suggested, he should have leave to amend on payment of costs.