ISAAC N. PHELPS et al., Appellants, *v.* ROBERT B. BORLAND, Respondent.

A foreign discharge in bankruptcy is not a defense to an action brought here, upon a debt or obligation of the bankrupt, by a citizen who was not a party to, and did not appear in the bankruptcy proceedings, although such debt or obligation was contracted under the law of the jurisdiction of the Bankruptcy Court, and was to be there paid.

*May* v. *Breed* (7 Cush. 15), disapproved.

Defendant, a citizen of this country, drew his bill of exchange upon a Liverpool firm, which he sold to plaintiffs, residents of this State. The bill was accepted by the drawees, but they having failed, it was protested for non-payment. The acceptors were discharged in bankruptcy upon a compromise by the English court. Plaintiffs, who were originally not parties to the bankruptcy proceedings, voluntarily, and without the consent of defendant, appeared, proved their claim, and accepted the composition decreed. In an action upon the bill, *held*, that as the foreign discharge would in and of itself have been no defense to the American holder of the bill, and plaintiffs, had they not surrendered the right, would have been at liberty to proceed by attachment against any property of the bankrupts in our jurisdiction, to which right it would have been the privilege of defendant, as surety, to succeed by way of subrogation upon payment of the debt, and as, by the acceptance of the composition, this right was surrendered, defendant was thereby released from liability.

(Submitted May 31, 1886; decided November 23, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made at the September term, 1883, which overruled plaintiffs' exceptions and directed judgment for defendant on a verdict. (Reported below, 30 Hun, 366.)

This action was brought against defendant as the drawer of a bill of exchange, the substance of which and the material facts are stated in the opinion.

*Thomas H. Hubbard* for appellants. A holder of commercial paper has a right to make proof upon it against the maker or acceptor in bankruptcy, and, after receiving dividends, to collect the unpaid balance from drawer or indorser. (*In re Babcock*, 3 Story [U. S.], 393; *Bowery Savings Bk.* v. *Clinton*, 2 Sandf. 113; *Sigourney* v. *Williams*, 1 Gray [67 Mass.],

623; *Tieman* v. *Woodruff*, 5 McLean, 350; *Claflin* v. *Cogan*, 48 N. H. 411; *Brown* v. *Carr*, 7 Bing. 508.) It is the holder's duty to make such proof for the relief and protection of the parties liable in the second instance. (*Talcot* v. *Souther*, 9 Bankr. Reg. 502.) Even if the holder making proof should vote for the discharge of the bankrupt maker or acceptor, such action would not release the drawer or indorser, since the discharge results from the operation of law, and not from the act of the creditor. (*Ex parte Jacobs*, L. J. Rep. [N. S.] 44; Part 1, Bankruptcy, 34; *Phillips* v. *Solomon*, 42 Ga. 192; Blumenstiel's Law and Practice in Bankruptcy, 543, 550, 551.) The discharge, under the bankruptcy law, of a merchant residing in England from a debt to a citizen of Massachusetts, contracted and payable in England, is a bar to an action in Massachusetts upon the same debt. (*May* v. *Breed*, 7 Cush. [61 Mass.] 15, 38; *Ogden* v. *Saunders*, 12 Wheat. 213; Story on Conflict of Laws, § 341; *Peck* v. *Hubbard*, 26 Vt. 704; *Very* v. *McHenry*, 29 Me. 206, 214; *Gardner* v. *Oliver Lee & Co.'s Bk.*, 11 Barb. 562, 563.) The discharge in bankruptcy in England of the acceptor of a bill drawn on an English house, accepted in England and payable there, must be held to discharge a claim on the bill wherever litigated or asserted. (Story on Conflict of Laws, §§ 331, 338, 340, 341; *Hibernia National Bk.* v. *Lacombe*, 84 N. Y. 367; *May* v. *Breed*, 7 Cush. [61 Mass.] 15; *Ellis* v. *McHenry*, L. R., 6 C. P. 228, 234, 236; *Peck* v. *Hubbard*, 26 Vt. 698; *Green* v. *Sarmiente*, 1 Peters' C. C. 74; 32 and 33 Victoria, chap. 72 [Vol. 109, p. 277], §§ 12, 28, 49, 50, 125, 126.) A discharge in bankruptcy is not an extinguishment of the bankrupt's contracts. It is a release of his person and of his property acquired after the bankruptcy from process to enforce the contracts. (*Bowery Savings Bk.* v. *Clinton*, 2 Sandf. 113.) The court, in whose jurisdiction the property is found, may distribute it according to its own rules of preference among the debtor's creditors without invalidating or questioning the effect of the foreign discharge as a protection to the debtor. (*Saunders* v. *Williams*, 5 N. H. 213.)

*Frank D. Sturges* for respondent. The liability of the defendant is to be determined by the law of the State of New York, and not by that of Great Britain. (*Edgerly* v. *Bush*, 81 N. Y. 199 ; *Merchants' Bk.* v. *Griswold*, 72 id. 472, 480 ; *Scott* v. *Pilkington*, 14 Abb. Pr. 280.) The composition proceedings having been fully carried out, Samuel Johnston & Co., the acceptors, were discharged from all liability to the plaintiffs upon the draft. (Act of 1869, § 126, 32 and 33 Vict. ; *In re Hurst*, 13 Bankr. Reg. 455 ; *In re Bechet*, 12 id. 201.) Had not the plaintiffs, who were citizens of New York, voluntarily taken part in those proceedings, the discharge would have been no bar to an action by them. (*Baldwin* v. *Hale*, 1 Cliff. 515 ; affirmed, 1 Wall. 223 ; *Towne* v. *Smith*, 1 Woodb. & M. 127 ; *Carron Co.* v. *Maclaven*, 5 H. of L. Cas. 416 ; *Gardner* v. *Oliver Lee & Co.'s Bk.*, 11 Barb. 558, 565 ; *Sturges* v. *Crowninshield*, 4 Wheat. 122 ; *Ogden* v. *Saunders*, 12 id. 213, 368 ; *Boyle* v. *Zacherie*, 6 Pet. 635.) Having voluntarily subjected themselves to the jurisdiction in which the proceedings were had, having proved their claim, and accepted the dividend, the plaintiffs have themselves, of their own motion, released the debt, and discharged the debtors. (*Clay* v. *Smith*, 3 Pet. 411 ; *In re Bechet*, 12 Bankr. Reg. 201 ; *Ex parte Carew*, L. R., 10 Ch. 308 ; *Campbell* v. *Imthorne*, L. R., Ch. Div., 1875, 1876, 762.) The release of the acceptors discharged the defendant. (Daniel on Neg. Inst. 1290, 1303, 1306, 1310 ; Edwards on Bills and Prom. Notes, 430 ; *Newcome* v. *Raynor*, 21 Wend. 108 ; *Farmers' Bk. of Amsterdam* v. *Blair*, 44 Barb. 641, 653–4 ; *Deck* v. *Works*, 18 Hun, 266, 272 ; *Brown* v. *Williams*, 4 Wend. 360 ; *Lynch* v. *Reynolds*, 16 Johns. 41 ; *Mottram* v. *Mills*, 2 Sandf. 189 ; *Gardner* v. *Oliver Lee & Co.'s Bk.*, 11 Barb. 558 ; 3 Brown's Ch. 1 ; 5 Barb. 520 ; 18 Ves. 26 ; 7 Hill, 250 ; 2 Ves. 540.)

FINCH, J. The defendant, a citizen of this country, drew a bill of exchange to his own order at sixty days' sight upon Johnston & Co., who were English merchants residing in Liverpool. The defendant sold it to the plaintiffs, who were

American bankers, residing in New York. The bill was duly accepted by Johnston & Co., payable in London, who thereby, as to the plaintiffs, became the principal debtors, the drawer being contingently liable upon their default and holding the position of a surety for the payment of their debt. The bill was protested for non-payment at its maturity, Johnston & Co. having failed and being unable to meet their liabilities, and the holders now sue the drawer to recover its amount. The latter defends upon the ground that, as surety, he was entitled, upon payment of the bill, to be subrogated to the rights of the holder, and that the latter had so destroyed or materially impaired those rights as to have lost all remedy against the drawer. The fact relied on as the cause and basis of this result is, that the acceptors were discharged in bankruptcy upon a compromise by the English courts, and that the plaintiffs, who were originally not parties to the proceeding, became so afterward voluntarily, and proved their claim and accepted the composition decreed, whereby the judgment became binding upon them in this country as well as in England, and so the acceptor was wholly discharged and his right of subrogation as surety rendered valueless. The answer made to this contention is, that the foreign discharge in bankruptcy was operative against the holders in this country, even although they had never become parties to the proceeding, and so the release of the acceptor flowed from no act of theirs, and consequently they had not invaded or affected the drawer's rights.

The authority pressed upon our attention, and which we are asked to follow, is that of *May* v. *Breed* (7 Cush. 15). The deserved reputation of the court, and the great ability of its reasoning, may well make us hesitate and reflect before adopting a contrary conclusion; but, deeming the question substantially settled, both in our own State and in the Federal courts, adversely to the opinion cited, we feel it our duty to acquiesce in that result. Two propositions are conceded on all sides. That the title of a foreign assignee, conferred by the foreign bankrupt law, may be asserted in our courts, but cannot operate or be effectual as against our own citizens pursuing their

remedies as creditors against the bankrupt or his property within our jurisdiction, or when the recognition of such title is against our public policy is conceded in *May* v. *Breed* and has quite recently been decided by us. (*In re Waite*, 99 N. Y. 433.) And that, as between the States of the Union, a discharge by the law of one will not bar the right of a creditor who is a citizen of another and not a party to the proceeding is equally well settled by a substantial concurrence of authority. The argument of the learned chief justice in the Massachusetts case is largely occupied with an effort to show that these two propositions do not decide the case of a discharge by the foreign court of a debt or obligation contracted under the law of its jurisdiction, and to be there paid and discharged. It is asserted that the cases between citizens of different States in our own country rest, not upon doctrines of international law, but upon provisions of the Federal Constitution and governmental relations peculiar to our national organization. The most important and authoritative of these is *Ogden* v. *Saunders* (12 Wheat. 217), and it is subjected to the double criticism that it did not, in all respects, reflect the opinion of the court, and that it decided no question of international law. The first suggestion was fully and finally answered in *Baldwin* v. *Hale* (1 Wall. 223), where the authority assailed was vindicated, and its doctrine expressly ratified and affirmed. The second suggestion seems to us not sustained by a careful reading of the case. The question before the court was stated to be " whether a discharge of a debtor under a State insolvent law would be valid against a creditor and citizen of another State who has never voluntarily subjected himself to the State laws otherwise than by the origin of his contract," and was argued in two forms; first, as a question of international law, and second, under the Federal Constitution. Upon the first branch of the argument, the English rule was admitted to be that " the assignment of the bankrupt's effects under a law of the country of the contract should carry the interest in his debts wherever his debtor may reside," and then it was declared to be " perfectly clear that in the United States a differ-

ent doctrine has been established, and since the power to dis-
charge the bankrupt is asserted on the same principle, with the
power to assign his debts, that the departure from it in the one
instance carries with it a negation of the principle altogether."
At a later stage of the opinion, attention is called to the cir-
cumstances that the discharge is always and necessarily an ad-
judication of a court, and depends wholly upon the operative
force of that adjudication; and that neither comity nor justice
requires that we shall hold one of our citizens bound by a
judgment of a foreign court, to which he was not a party, could
not be compelled to be a party, and of which he might have had
no notice.    I have less hesitancy in thus asserting the error of
*May* v. *Breed*, in construing the decision of the Federal court
as standing outside of international law, and, so, not authority in
a case like this, because I observe that Mr. Redfield, in editing
a new edition of Story on the Conflict of Laws, has deemed it
necessary to criticise his author's assertion of the same error
(§ 341 *a*), and more especially because the Supreme Court it-
self, in the later case of *Baldwin* v. *Hale* (*supra*), put its
decision mainly upon a ground not peculiar to our Federal re-
lations but upon the effect of a foreign judgment.    This last
case, also, referring to the Massachusetts doctrine "that if the
contract was to be performed in the State where the discharge
was obtained, it was a good defense to an action on the con-
tract, although the plaintiff was a citizen of another State and
had not, in any manner, become a party to the proceedings,"
expressly repudiated the conclusion, saying that, "irrespective
of authority, it would be difficult, if not impossible, to sanction
that doctrine."

In our own State two cases have been decided in substantial
accord with the ruling of the Federal court. (*Gardner* v.
*Oliver Lee & Co.'s Bank*, 11 Barb. 558; *In re Waite, supra*.)
The latter case stated the general rule without grafting upon it
any exception founded upon the origin of the contract.    We
are content to follow these authorities without entering into
the wide and difficult discussion in which they culminated.    It
follows, therefore, in the present case that the foreign discharge

would have been, in and of itself, no defense to the American holder of the bill. If property of the bankrupt should be found in our jurisdiction, the plaintiffs were at liberty to proceed against it by attachment and collect their debt out of such property, and the foreign bankruptcy proceedings would neither prevent nor stand in the way, for the sufficient reason that their only force in our jurisdiction comes from our consent, and we have chosen thus to limit that consent. The right remaining to the plaintiffs was a valuable right. It charged with the payment of the protested bill any present or future acquisitions of the acceptors which might come into our jurisdiction, and might result in the collection of the whole debt, or a compromise settlement induced by the desire or interest of the debtors to have access to our markets, and freedom to resume their business among us. To that right, thus valuable and material, it was the privilege of the surety to succeed, by way of subrogation, whenever he should pay the debt, and the plaintiffs could not deprive him of it or impair and destroy it, except at the peril of releasing him from his liability. Just that was what the plaintiffs did. Tempted by the compromise offered, they sought to obtain the defendant's consent to its acceptance by him. That consent he withheld, but they, acting upon their own conceptions of what was most for their interest, voluntarily submitted themselves and their rights as creditors to the foreign jurisdiction, proved their debt, and accepted the compromise decreed. The condition of the dividend was a release of the debtor. They could not take the compromise and avoid the condition, and so by their act they discharged the acceptors entirely and everywhere. That such is the effect of their voluntary submission to the foreign jurisdiction is inevitable on principle, and has been often decided. (*Gardner* v. *Oliver Lee & Co.'s Bank*, *supra*; *Clay* v. *Smith*, 3 Peters [U. S.], 411.) The unavoidable consequence follows. The creditor having by his own voluntary act released the debtor from all remaining liability his surety is discharged. The courts below so held, and we think correctly.

But another suggestion has arisen among us, original with

the court, and not at all urged in the brief of counsel prepared with great thoroughness and ability. That suggestion is that Borland consented to the acceptance of the dividend by plaintiffs, and so lost the right to complain; and the evidence on which this is founded is said to exist in two letters which passed between the parties. It is not pretended that plaintiffs' letter asks Borland's consent to their acceptance of the dividend, or that he, in terms, gave that consent, but such consent not directly asked or given is sought to be inferred from what was written. The letters are but the declarations of the parties bearing on the issue, and none the less so because they happen to be in writing. The proper inferences to be drawn from them were questions of fact, more or less affected by the other evidence in the case. Whether, from the language used, Borland meant to give his consent, and waive his rights, or plaintiffs understood him to consent, and acted upon that understanding, or without it, were certainly inquiries for the jury, and not for the court. But neither party asked to go to the jury upon any question of fact, and each by asking judgment in his own favor waived any possible question of fact, and conceded that only questions of law were involved. Were this otherwise, the result would not be changed. As I have said, plaintiffs did not ask Borland's consent to their proving their own claim. On the contrary, they asked him to prove his, in order that they might not be compelled to prove theirs. The plain meaning was, we ask you to prove yours; if you decline, we shall prove ours at all events. To this request, the only one made, Borland returns a refusal. That it is politely said in the phrase addressed to the counsel, " I would much prefer that your clients adopt some other course for securing to themselves dividend," means only in connection with their explicit avowal, do it yourselves, if you choose to do it at all. And then, as if fearing the very misconstruction now suggested, he adds: " I think upon the whole it may be better to leave the matter as it stands at present, rather than complicate it by assuming to be bailee of any funds they may claim as theirs. I do not aspire to the position." Unquestionably his meaning is, it is best

that neither of us touch this dividend, and I, at least, refuse. Language must be misinterpreted to make this a consent, and a waiver of the surety's rights.

The judgment should be affirmed, with costs.

All concur, except EARL, J., dissenting, and RUGER, Ch. J., not voting.

Judgment affirmed.