FRENKEL & Co., INC., Appellant, Respondent, *v.* L'URBAINE FIRE INSURANCE COMPANY OF PARIS, FRANCE, Respondent, Appellant, Impleaded with ALFRED SCHARNBERG and Another, Composing the Firm of ALFRED SCHARNBERG & Co., Defendants.

First Department, March 1, 1929.

*W. C. Prime* of counsel [*R. E. & A. J. Prime*, attorneys], for the plaintiff.

*Hartwell Cabell* of counsel [*Blaine F. Sturgis* with him on the brief; *Cabell, Ignatius & Lown*, attorneys], for the defendant L'Urbaine Fire Insurance Company of Paris, France.

MERRELL, J. Plaintiff is a domestic corporation doing business in the city of New York. The defendant insurance company is a French corporation located at Paris, France. The plaintiff sues as assignee of Alfred Scharnberg and Robert Scharnberg, German subjects, composing the firm of Alfred Scharnberg & Co., doing business in Paris, France. It is alleged that the firm of Scharnberg & Co. was under contract with the defendant L'Urbaine Fire Insurance

Company of Paris, France, to receive commissions upon premiums received by it from fire insurance negotiated by said Scharnberg & Co., plaintiff alleging that said defendant had collected large sums of money upon which Scharnberg & Co. were entitled to commissions, payment of which commissions had been demanded by plaintiff of the defendant and refused by defendant. Plaintiff asked for an accounting of the commissions received and that the plaintiff, as assignee of Scharnberg & Co., be adjudged entitled to all the benefits and profits and commissions due Alfred Scharnberg & Co. under said agreement with defendant, and that the amount of said commissions be determined in the action, and that plaintiff have judgment therefor against defendant, together with costs and disbursements of the action. After the commencement of the action plaintiff's complaint was amended to an extent immaterial to the questions involved upon this appeal.

The defendant answered the amended complaint, setting up five separate defenses. The plaintiff moved to set aside said defenses as insufficient, and the Special Term, to which plaintiff's motion was addressed, granted the same as to three of the defenses and denied it as to two. Both plaintiff and defendant appealed to this court from the order of the Special Term, and this court struck out all five defenses alleged in the answer of the defendant to plaintiff's amended complaint. (*Frenkel & Co., Inc., v. L' Urbaine Fire Ins. Co.*, 222 App. Div. 299.) The first separate defense alleged in the third amended answer here under review and which the court below held to be sufficient, denying plaintiff's motion to strike out the same, was, in substance, the same defense set forth in the first answer to the plaintiff's amended complaint, which was passed upon by this court on the first appeal above mentioned. This defense, in brief, was that all the property, rights and interests of the plaintiff's assignor, Alfred Scharnberg & Co., a copartnership composed of German citizens, organized and doing business in France, and all right, title and interest in and to the contract in question between plaintiff's assignors and defendant, as well as all accruals thereunder, were seized by the French Sequestrator acting under and pursuant to certain French laws and decrees applicable to such claims. Mr. Justice McAvoy wrote the opinion of this court, holding that the said first defense, although good, was imperfectly pleaded. In the course of his opinion, in which all the justices of this court concurred, Mr. Justice McAvoy wrote: " The first defense, in effect, is that all the interest of Scharnberg & Co. was seized by the Sequester acting for and in behalf of the government of France. *This defense would be good if the allegation further pleaded the laws of France governing the situation and alleged the facts showing that Scharnberg*

*& Co. and this contract were subject to their provisions."* (Italics are the writer's.)

Upon the decision of said appeal leave was granted defendant to serve an amended answer upon payment of costs. The costs were paid and the defendant served an amended answer setting up again four defenses, among them said first separate defense with additional allegations to meet the criticism of this court, pleading the laws of France governing the situation and alleging facts showing that plaintiff's assignors were subject to the provisions of the French laws and decrees. Plaintiff again moved to strike out the four defenses contained in the said amended answer, and the motion was granted at Special Term. Upon appeal to this court the order striking out said four defenses was affirmed, without opinion. (*Frenkel & Co., Inc.,* v. *L' Urbaine Fire Ins. Co.,* 224 App. Div. 732.) The plaintiff, appellant, contends upon this appeal that this court did not intend to hold upon the first appeal that such a defense was good in any event, and that the justice presiding at Special Term on the second motion, in striking out the same defense with the added allegations as to the French law and decrees and their applicability to the situation presented, in effect held that such defense was not good. I am unable to agree with either of these contentions of the appellant. I think this court clearly indicated in its opinion its view that the defense, if properly pleaded, was good. All that the justice, in granting the motion to strike out said defense, among others, held, was that the defense as pleaded was imperfect because of the failure of the defendant to allege that the suspension of payment under the contract in question between plaintiff's assignor and the defendant was in force during the period for which the accounting was sought in this action. The learned justice in his opinion stated: " There is no allegation that such suspension was in force during the period for which an accounting is sought in this action. By the terms of the French Act it was to have ' force and effect during the whole period of the hostilities and up to a date which will be set later by decree.' The Treaty of Versailles was signed on June 28, 1919. Plaintiff seeks an accounting for commissions earned between June, 1920, and June, 1926. The French Act of September 27, 1914, was a temporary regulation intended to prevent commercial intercourse between its citizens and those of belligerent nations during the war period. There certainly can be no presumption that it continued in force twelve months after the Treaty of Versailles was signed. *If defendant claims that it was in force during any part of the period involved in this suit such part should be affirmatively alleged."* (Italics are the writer's.)

Such a holding was far from deciding that the defense alleged was

not good, but on the contrary held that the defense alleged would be good with the further allegation that the French act was in full force and effect and unrepealed during the period for which an accounting is asked. Upon the granting of the motion to dismiss the defenses set forth in the second amended answer, leave was granted to defendant to amend upon payment of costs. Defendant met the terms imposed and served a third amended answer realleging as a first separate defense the same defense that all right, title and interest in the contract in question as well as all accruals thereunder were seized by the French Sequestrator and further alleging the enactment of the laws and decrees by the French government regulating the rights and duties of French citizens and German nationals, which decrees were made retroactive as of the date of the declaration of war. The last amended answer sets forth that by virtue of the Treaty of Versailles the French government reserved the right to retain and liquidate all property which the German nationals possessed in France on November 11, 1918, and thereafter established a Bureau of Private Goods and Interests which succeeded to the right, title and interest of plaintiff's assignors theretofore seized by the French government, and all future accruals thereunder, and especially to the future accruals due the said Alfred Scharnberg & Co. under the said contract with the defendant. The answer further alleges that the defendant accounted for and paid over to the French Sequestrator all the commissions accruing to the said Scharnberg & Co. under the said contract during the years 1914, 1915, 1916, 1917, 1918, 1919, 1920, 1921 and down to April 5, 1922. It is further alleged by the defendant in said first separate defense that the aforesaid laws and ordinances adopted by the French government have never been repealed, but have continued and still continue in full force and effect, and that the government of France has not passed any law or decree returning to alien enemies any rights, property or interests seized, sequestrated and confiscated under the aforesaid acts; and that no part of the moneys paid by defendant to the French Sequestrator has ever been returned to it, and that it has never received authority, either from the said Sequestrator or from the Director of the Bureau of Private Goods and Interests, or from any other officer or agent of the French government, to release or pay over the accrued commissions under said contract. The French laws and decrees applicable to the situation are pleaded *in extenso* in said first defense, and it is alleged that the same remain unrepealed and are in full force and effect. We think that this court is bound by its decision upon the first appeal, and also by its affirmance of the order of the Special Term on the second appeal, which, in effect, held said defense good if

accompanied by the additional allegations that during the period for which the accounting is asked the French sequestration statutes and decrees were in full force and effect. The validity of this defense was carefully considered by this court upon the former appeals, and we there decided that such defense was good when properly pleaded. We see no reason for adopting a different view at this time. The contract between Scharnberg & Co. and the defendant L'Urbaine Fire Insurance Company was made in France and was for the payment of commissions on premiums received by the defendant on policies procured to be issued by Scharnberg & Co. The premiums were payable in France and commissions thereon payable there. All benefits under the contract accrued in France. The French government had the right to enact laws providing for the seizure of these commissions payable to enemy aliens. The property and rights which the plaintiff claims have always been in France, and the French government had at all times under its enactments and decrees complete dominion over the same. The suggestion is made that we should not be astute to invalidate a contract made between German nationals and citizens of this country; that the plaintiff is an American citizen and entitled to the protection of our courts. We see no force whatever in this position. The French government had an entire right to enact statutes and promulgate decrees taking possession of the property in France of citizens of an enemy nation. It had a right, we think, to make such enactments retroactive in their effect. Under the allegations of the first defense contained in the amended answer, which must be taken as true, the Sequestrator has taken possession of the moneys for which the plaintiff is now seeking an accounting and payment to it by defendant. If plaintiff should succeed, then the defendant clearly will have been compelled to make double payment of the commissions in question. The United States enacted similar statutes and adopted rules vesting in the Alien Property Custodian the right of possession of the moneys and property of alien enemies in this country, and made the same retroactive in effect. Until repealed such statutes are in full force and effect. It does not appear where the alleged assignment, which the plaintiff claims to have received from Scharnberg & Co., was made. It is quite obvious that its purpose was to defeat the rights of the French government to the commissions due German nationals under the contract. The courts of this country have held invalid assignments made under similar circumstances. (*Stoehr* v. *Wallace*, 255 U. S. 239; *Schrijver* v. *Sutherland*, 19 F. [2d] 688.) It would thus seem that the first defense to the effect that the contract between the plaintiff's assignor and the defendant had been seized and that

the French government was in control of all rights thereunder and all moneys due thereon, that there had been no repeal of the decrees and statutes vesting in the French Sequestrator the right of such seizure, and that no decree has been entered authorizing the return of the properties in question, constituted a good defense to the plaintiff's cause of action, the defendant having fully set forth the French statutes and decrees showing that the assignment in question was in violation of the laws of France. We are, therefore, of the opinion that the court below correctly held such defense to be good.

The second defense contained in the amended answer was stricken out by the order appealed from herein. That defense was to the effect that in March, 1925, the plaintiff instituted a proceeding in the Civil Tribunal of Paris, which was a court of general jurisdiction, to recover the moneys which had been paid by defendant to the French government upon demand as commissions due plaintiff's assignor under the contract between plaintiff's assignor and the defendant, made in 1913; that plaintiff in that proceeding relied upon as his source of title the assignment of August 27, 1914, which is the same assignment relied upon in this action. The defendant further alleges that the court in that proceeding held that the assignment, having been made after war was declared between France and Germany, was void as fraudulent. The defendant in its second defense further alleges that the plaintiff has not appealed from said judgment, and that the time to appeal has expired. The justice below held that, as the defendant was not a party to that proceeding, there was no mutuality of estoppel, and that the judgment at that time was not a bar to the present action here, and was not *res adjudicata*. We think the court below was entirely correct in holding such defense of *res adjudicata* bad. It does not appear in the alleged defense that the subject-matter involved in the French litigation was the same as that involved in the present action. In order that the former adjudication shall be binding upon the parties, it must appear that the action was between the same parties and involved the same subject-matter. (*St. John* v. *Fowler*, 229 N. Y. 270; *Bigelow* v. *Old Dominion Copper Co.*, 225 U. S. 111.) The defendant was neither privy nor party to the action or proceeding to recover the moneys which had been paid to the French government and involved in the proceeding taken by the plaintiff before the Civil Tribunal of Paris. Had the plaintiff succeeded in that proceeding against the Sequestrator, it would have had no binding effect upon this defendant, who was not a party to such proceeding. We, therefore, think the court properly held that the second separate defense was insufficient and dismissed the same.

The order appealed from should be in all things affirmed, without costs to either party as against the other.

DOWLING, P. J., and FINCH, J., concur; O'MALLEY and PROSKAUER, JJ., dissent.

PROSKAUER, J. (dissenting). The plaintiff, a New York corporation, alleges that for value it received an assignment from Alfred Scharnberg & Co. of the benefits accruing to the assignors from a contract made between them and the defendant insurance company prior to .November 10, 1913. The partners composing the firm of Alfred Scharnberg & Co. were German nationals, residents of France. By the terms of this contract the defendants agreed to pay to Scharnberg & Co. as compensation for services which had been fully rendered and without obligation on Scharnberg's part to perform any further services, a stated commission on business procured for the defendant in the United States by a firm of brokers whose services had been secured for the defendant by Scharnberg & Co. The assignment for value to the plaintiff was executed on August 27, 1914, after the declaration of war between France and Germany. The complaint contains no allegation of the place where the assignment was made, and while possibly we may not infer that the uncontradicted statement upon argument that the assignment was in fact executed and delivered in the United States is correct, we have no right to assume that it was executed in France. Neither complaint nor answer contains any allegation upon this subject.

The defendant has set up as a first and separate defense that, subsequent to the time of the making of the assignment to the plaintiff, the French government passed a statute which declared that " any agreement or contract drawn in any and every place between French citizens  *  *·  *  and subjects of the Empire of Germany  *  *  *  is null and void as contrary to public policy." The statute purported to make this provision retroactive to August 4, 1914. This defense further alleges that on January 22, 1916, the French government enacted a law that " any person holding funds belonging to German subjects, or owing.funds to German subjects " shall upon demand pay such funds to a Sequestrator; that pursuant to said law, defendant paid over " to the said Sequestrator all of the commissions accruing to the said Scharnberg & Company under the said contract during the year 1914  *  *  *  down to the 5th of April, 1922." There are no allegations respecting the payment of the " commissions " which accrued during the years 1923 to 1926, for which the plaintiff also seeks recovery.

The provisions of this statute constitute no defense against the claim of an American citizen who purchased for value from a Ger-

man national a claim based upon an executed consideration against a French national at a time when there was no French law forbidding the transaction and at a place which we are unable to say was subject to the jurisdiction of the French government. Conceivably, if this transfer was made in France, it might be attacked as invalid upon the general principle that the validity of an assignment is to be determined by the laws of the country in which it was made. But there is no such allegation contained in the defense. The assignment of the contract was, therefore, valid.

The French statute purported to make the contract to pay " commissions " void as of August 4, 1914. It is difficult to see how sequestration of commissions under a void contract is a defense to the debtor. Its defense must rest solely on the provision of the statute which makes void any contract between Frenchmen and Germans no matter where or when made. But, by virtue of the assignment, at the time the statute was passed the obligation of the French defendant was to pay not to a German but to an American. Whatever may be the public policy of a belligerent nation under the pressure of war, we do not think that comity requires recognition by a neutral nation of a statute so sweeping in character and so destructive of a property right of our own citizens. We recognize sympathetically the efforts of belligerents to legislate to prevent the increase of the resources of their enemies; but we cannot push comity to the extent of denying to our own citizens as neutrals the right to traffic with belligerents in so far as such traffic does not involve overt acts of hostility. Examination of the authorities following the World War discloses no case where the principle of comity has so far been extended as to deprive an American citizen of a property right which he acquired for value at a time when there was no legal ban against the transaction and at a place where no law prohibiting the transaction had either present or retroactive force.

We are not here concerned with a nominal transfer of assets, where " the parties intended to leave the beneficial ownership in the German corporation and not to pass it to the New York corporation." (*Stoehr* v. *Wallace*, 255 U. S. 239, 251.) Nor are we concerned with stock in a corporation where the law of the situs of the stock certificate has a qualified power to affect its title (*Direction Der Disconto-Gesellschaft* v. *U. S. Steel Corp.*, 267 U. S. 22), subject to the paramount power of the law which created the corporation. (*Miller* v. *Kaliwerke Aschersleben Aktien-Gesellschaft*, 283 Fed. 746; *Schrijver* v. *Sutherland*, 19 F. [2d] 688.) We are here confronted with the problem of whether a nation acquires jurisdiction retroactively to extinguish a debt after the obligee has transferred the chose in action for value to a neutral in a neutral country.

In *James & Co.* v. *Second Russian Ins. Co.* (239 N. Y. 248, 257) the Court of Appeals had occasion to consider the question of jurisdiction to confiscate debts. CARDOZO, J., there wrote:

" Was it [the liability] extinguished by the Soviet decree canceling or releasing the debts of the nationalized companies? * * * As to the Soviet decree, we think its attempted extinguishment of liabilities is *brutum fulmen*, in England as well as here, and this whether the government attempting it has been recognized or not. Russia might terminate the liability of Russian corporations in Russian courts or under Russian law. Its fiat to that effect could not constrain the courts of other sovereignties, if assets of the debtor were available for seizure in the jurisdiction of the forum * * *. The decree invoked by the defendant is not in any true sense a decree of bankruptcy, though even if it were, there would be limits to its extraterritorial validity. [*Phelps* v. *Borland*, 103 N. Y. 406.]

" A decree of bankruptcy presupposes a distribution of the assets for the benefit of creditors, and this decree is one of confiscation, appropriating the assets for the benefit of the Soviet Republic. One government does not execute the tax laws of another (*State of Colorado* v. *Harbeck*, 232 N. Y. 71, 82), nor help another in enforcing a penalty or forfeiture (*Loucks* v. *Standard Oil Co.*, 224 N. Y. 99, 102). If this is so where the foreign statute or decree is that of a recognized government *de jure*, it is still more clearly so where the decree is that of a government to which recognition has been denied. Neither comity nor public policy requires us to enforce a mandate of confiscation at the behest of such a government to the prejudice either of our own citizens or of those of any friendly power seeking justice in our courts." (Compare *Second Russian Ins. Co.* v. *Miller*, 268 U. S. 552.)

Under the facts herein alleged, France had no jurisdiction to confiscate the incorporeal right bought and paid for by an American corporation. Neither comity nor public policy requires or permits us to recognize the French mandate of confiscation to the prejudice of our own citizens seeking justice in our courts. France could confiscate German property, but not American property.

On a former appeal in this action reference was made to a defense that Scharnberg & Co.'s interest " was seized by the Sequester acting for and in behalf of the government of France." It was stated in the opinion of Mr. Justice MCAVOY (222 App. Div. 299) that this defense would be good if the allegation further pleaded the laws of France governing the situation and alleged the facts showing that Scharnberg & Co. and this contract were subject to their provisions. The very purpose of holding the defense bad

upon the former appeal was to require a statement of the provisions of the French statute and of the circumstances surrounding its enactment in order that the court might for itself determine whether the statute constituted a defense. We there held that we were not bound by the pleader's conclusion that the statute was a defense, but that we were required to examine the statute to ascertain whether the date of its enactment, the period during which it was in force, and its terms and provisions would operate to bar the plaintiff's claim. The contention that we decided in advance that if they were pleaded we would hold the defense good is in my view untenable.

For these reasons the order appealed from should be reversed in so far as it sustains the first affirmative defense.

I concur with the opinion of Mr. Justice MERRELL in so far as it approves the holding of the Special Term that the second affirmative defense is insufficient.

O'MALLEY, J., concurs.

Order so far as appealed from affirmed, without costs.