825 F.2d 709
 1987 A.M.C. 2945
 VICTRIX STEAMSHIP CO., S.A., Plaintiff-Appellant,
Insurance Co. of North America, Plaintiff,
v.
SALEN DRY CARGO A.B., Defendant-Appellee,
M/V SEATRANSPORT, her engines, etc., Continental Maritime,
Inc., and Brown Brothers Harriman & Co., as
Garnishee, Defendants.
 No. 583 Docket 86-7827.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 13, 1987.
Decided Aug. 5, 1987.
 
 Peter J. Gutowski, New York City (Wayne D. Meehan, Freehill, Hogan & Mahar, New York City, on the brief), for plaintiff-appellant.
 Donald J. Kennedy, New York City (Paul E. O'Brien, Haight, Gardner, Poor & Havens, New York City, on the brief), for defendant-appellee.
 Before NEWMAN, MINER and MAHONEY, Circuit Judges.
 JON O. NEWMAN, Circuit Judge:
 
 
 1
 This appeal presents the issue whether comity considerations oblige the courts of this country to defer to a bankruptcy proceeding of another country as to the enforcement of an arbitration award and a money judgment based on maritime claims entered against the bankrupt in a third country. The issue arises on an appeal by Victrix Steamship Company, S.A. ("Victrix") from an order of the District Court for the Southern District of New York (Robert L. Carter, Judge) vacating an attachment Victrix had obtained against funds owed to Salen Dry Cargo A.B. ("Salen"), a debtor in Swedish bankruptcy proceedings. The order also awarded Salen attorney's fees for wrongful attachment. Judge Carter vacated the attachment after deciding to defer to the Swedish bankruptcy court's resolution of issues concerning enforcement of a London arbitration award and a British judgment. Agreeing with the District Court's decision to defer to the Swedish bankruptcy proceeding, we affirm the order vacating the attachment and awarding fees.
 
 Background
 
 2
 In August 1984, Victrix, a Panamanian corporation, and Salen, a Swedish corporation, entered into an agreement for the charter of Victrix's ship, the M/V PLOTO. On December 19, 1984, Salen filed for bankruptcy in Stockholm. The next day, Salen told Victrix it would make no further payments on the charter party. The Swedish bankruptcy court appointed an interim administrator in bankruptcy and suspended creditor suits against Salen.
 
 
 3
 Seeking to recover damages incurred by Salen's default, Victrix promptly commenced arbitration in London as provided in the charter party. Salen and its administrator declined to participate, telexing Victrix that, rather than pursuing arbitration, creditors "should file any claim they may have with the bankruptcy estate." While Victrix followed this advice and filed a claim against the bankrupt's estate in February 1985, it also continued to pursue its arbitration remedy. Victrix's arbitrator, proceeding alone in the absence of an arbitrator designated by Salen, held a hearing and on April 16, 1985, returned an award for Victrix of $302,531.96 with interest. On May 8, 1985, the High Court, Queen's Bench Division, entered judgment on the award under Section 26 of the British Arbitration Act, 1950. Despite ample opportunity to challenge the award both before and after judgment was entered, Salen never appeared in the British judicial proceeding.
 
 
 4
 Meanwhile, Victrix pursued other avenues of recovery against Salen and its property in this country. On March 18, 1985, Victrix, claiming breach of the charter party, commenced an in personam admiralty action in the District Court for the Southern District of New York by attaching Salen's New York account with Brown Brothers Harriman & Co. Victrix then filed a suit in New York Supreme Court alleging the same facts and claiming breach of contract. On March 20, 1985, Victrix successfully obtained a state court order of attachment against the funds already attached in the admiralty action. Salen later removed the state action to federal court on the ground that it related to a subject of foreign arbitration, 9 U.S.C. Sec. 205 (1982);[1] the two suits were eventually consolidated with other related actions and assigned to Judge Carter.
 
 
 5
 In June 1985, Victrix moved in the District Court to confirm the London arbitration award and to enforce the British judgment, and Salen cross-moved to vacate the attachment. The parties agreed to adjourn the motions pending this Court's decision in Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., now reported at 773 F.2d 452 (2d Cir.1985), a case concerning the same Swedish bankruptcy proceeding. We issued an opinion in that case on September 19, 1985, vacating a similar attachment in an admiralty action and holding that comity required deference to the ongoing Swedish bankruptcy proceeding. Relying primarily on Cunard, Salen, represented by the administrator in bankruptcy, renewed its motion. It sought an order vacating the attachment and awarding attorney's fees for wrongful attachment under N.Y.Civ.Prac.L. & R. 6212(b) (McKinney 1980). Victrix cross-moved (1) to confirm the arbitration award under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. Sec. 201 et seq. (1982) ("the Convention"); (2) to enforce the British judgment under the Convention, the doctrine of comity, and N.Y.Civ.Prac.L. & R. 5301-5303 (McKinney 1978); and (3) to confirm the state court order of attachment.
 
 
 6
 The District Court ruled in favor of Salen, vacating the attachment and awarding Salen attorney's fees under New York law for wrongful attachment. 65 Bankr. 466 (S.D.N.Y.1986). Judge Carter did not decide whether to enforce the London arbitration award or the British judgment, deferring decision on these matters to the Swedish bankruptcy court. No order was entered with respect to the attached funds, which by stipulation had been paid into the registry of the District Court and remain invested in an interest bearing account. Salen has proposed that the funds be transferred to the account of its liquidator in the Swedish bankruptcy proceeding. Victrix appeals from the order vacating the attachment and awarding attorney's fees.
 
 Discussion
 
 7
 Preliminarily, we consider our appellate jurisdiction. An order vacating an attachment has been deemed appealable as a collateral order, Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 688-89, 70 S.Ct. 861, 864-65, 94 L.Ed. 1206 (1950); Chilean Line Inc. v. United States, 344 F.2d 757, 759 (2d Cir.1965), at least in a case like this where serious and unsettled issues are involved, see Dayco Corp. v. Foreign Transactions Corp., 705 F.2d 38, 40 (2d Cir.1983). Complicating the matter somewhat is the absence of an order disposing of the funds that were brought within the jurisdiction of the District Court as a result of the attachment. Normally an appealable order vacating an attachment leaves nothing further to be done with respect to the attached funds. Nevertheless, we think it appropriate to exercise appellate jurisdiction over the order vacating the attachment. The parties appear not to dispute that, if the attachment is to be vacated, the funds should be transferred to the liquidator. Indeed, the destination of the funds is inextricably linked to the issue on the merits whether enforceability of the London arbitration award and the British judgment should be left for decision by the Swedish bankruptcy court.
 
 
 8
 Choice of Law. Before considering the merits of the appeal, we face a choice of law issue, both with respect to Victrix's claim for enforcement of the London arbitration award and its claim for enforcement of the British judgment. With respect to the claim for enforcement of the arbitration award, it is clear that federal law applies. The Convention is a treaty of the United States governing the enforcement of foreign arbitration awards. It sets forth a procedure for enforcement of foreign arbitration awards to which all signatories are expected to abide. The obligations of the United States under the Convention would be undermined if they were not determined according to a uniform body of federal law. Though the nature of obligations under the Convention are matters of federal law, it is arguable that state law might nevertheless supply the rule of decision for claims that seek enforcement of foreign arbitration awards without resort to the Convention. We think, however, that the Convention preempts state laws and leaves the entire subject of enforcement of foreign arbitration awards governed by its terms. See Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313, 1319 (2d Cir.1973) (ruling that Convention does not preempt state law governing enforcement of foreign money judgments but indicating, by implication, that it would preempt state law concerning enforcement of foreign arbitral awards ), cert. denied, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974).
 
 
 9
 With respect to the claim for enforcement of the British judgment, the matter is more complex. Neither the admiralty suit nor the removed state court suit initially included a claim to enforce the British judgment. That claim was made by motion after the suits were consolidated. Little if any attention was given as to whether the motion applied to the admiralty suit, the removed state court suit, or both, and whether the motion was governed by federal or state law. The federal suit was initially a proper invocation of the District Court's admiralty jurisdiction since it presented a claim for breach of a charter party. The state court suit based on the same maritime claim was properly brought in the state court under the "saving to suitors" clause. 28 U.S.C. Sec. 1333(1) (1982). The additional claim for enforcement of the British judgment asserted a maritime claim since an admiralty court has jurisdiction of a claim to enforce a foreign judgment that is itself based on a maritime claim. International Sea Food Ltd. v. M/V Campeche, 566 F.2d 482 (5th Cir.1978).
 
 
 10
 Though a maritime claim, the claim to enforce the British maritime judgment is not necessarily governed by federal law. See Wilburn Boat Co. v. Fireman's Fund Insurance Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955). As will shortly appear, the federal principle of comity, pertinent to the enforcement of foreign judgments, is not a principle peculiar to admiralty law. Not having been "judicially established as part of the body of federal admiralty law in this country," id. at 316, 75 S.Ct. at 371, the doctrine does not necessarily displace pertinent state law principles, unless this is an area in which it is appropriate for federal courts "to fashion controlling federal rules," id. There is room for fair debate whether enforcement of foreign admiralty decrees is an area appropriate for application of uniform federal law. We need not resolve the issue, however, since application of both federal and state law lead to the same result with respect to the claim for enforcement of the British judgment.
 
 
 11
 One aspect of the removed state court suit, however, is unquestionably appropriate for application of state law--the determination regarding attorney's fees for allegedly wrongful attachment. Victrix, having elected to avail itself of a state court remedy under the "saving to suitors" clause, must accept the state court procedural rules applicable to the remedy it has sought.
 
 
 12
 Federal Law Applicable to Enforcement of the Arbitration Award and the British Judgment. Under federal law, the recognition of foreign judgments and proceedings is governed by principles of comity.[2] See Hilton v. Guyot, 159 U.S. 113, 164, 16 S.Ct. 139, 143, 40 L.Ed. 95 (1895). Federal courts generally extend comity whenever the foreign court had proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy. See id. at 202-03, 16 S.Ct. at 158; Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., supra, 773 F.2d at 457.
 
 
 13
 American courts have long recognized the particular need to extend comity to foreign bankruptcy proceedings. Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., supra, 773 F.2d at 458 (footnote omitted) (citing examples); see Restatement (Second) of Conflict of Laws Sec. 409 (1969). The equitable and orderly distribution of a debtor's property requires assembling all claims against the limited assets in a single proceeding; if all creditors could not be bound, a plan of reorganization would fail. See, e.g., Canada Southern Railway Co. v. Gebhard, 109 U.S. 527, 539, 3 S.Ct. 363, 371, 27 L.Ed. 1020 (1883) (to be effective, plan to reorganize insolvent Canadian corporation must bind American creditors). Congress implemented this policy by enacting section 304 as part of the Bankruptcy Reform Act of 1978. This provision allows foreign bankrupts to prevent piecemeal distribution of assets in this country by filing ancillary proceedings in domestic bankruptcy courts. S.Rep. No. 989, 95th Cong., 2d Sess. 35, reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5821. Under general principles of comity as well as the specific provisions of section 304, federal courts will recognize foreign bankruptcy proceedings provided the foreign laws comport with due process and fairly treat claims of local creditors. See Canada Southern Railway Co. v. Gebhard, supra, 109 U.S. at 539, 3 S.Ct. at 371; IIT v. Lam (In re Colorado Corp.), 531 F.2d 463, 468 (10th Cir.1976). See also Drexel Burnham Lambert Group, Inc. v. Galadari, 777 F.2d 877, 880 (2d Cir.1985); Clarkson Co., Ltd. v. Shaheen, 544 F.2d 624, 629-30 (2d Cir.1976).
 
 
 14
 In Cunard this Court scrutinized the Swedish bankruptcy law to determine whether Salen's bankruptcy proceedings should be accorded comity. Cunard Steamship Company, Ltd., disregarding the Swedish court's stay against creditor suits, had attached Salen's assets in this country and sought to compel arbitration pursuant to a charter party. After satisfying ourselves that Swedish bankruptcy law was similar to the federal Bankruptcy Code, we concluded that "the public policy of the United States would be best served by recognizing the Swedish proceedings and thereby 'facilitat[ing] the orderly and systematic distribution of the assets of Salen.' " Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., supra, 773 F.2d at 459 (quoting District Court opinion). The pending case differs from Cunard in that Victrix has obtained both a foreign arbitration award and a foreign judgment. Nevertheless, we agree with Judge Carter that Cunard controls with respect to both the London arbitration award[3] and the British judgment, if federal law were applicable to the latter.
 
 
 15
 Victrix contends that comity itself provides justification for enforcing the London award and the British judgment. We disagree. Neither the award nor the judgment may be viewed in isolation. In light of Salen's bankruptcy, their enforcement would conflict with the public policy of ensuring equitable and orderly distribution of local assets of a foreign bankrupt.
 
 
 16
 We find equally unpersuasive Victrix's contention that Salen waived its right to invoke the defense of bankruptcy by failing to appear in the London proceedings. Where purely private rights are at stake, a judgment obtained by default nevertheless merits recognition. However, different concerns bear on a case such as this one, which takes on a public character by virtue of Salen's insolvency and the institution of the Swedish bankruptcy proceeding. Any distribution of Salen's limited assets is likely to affect other creditors, not parties to the proceeding, who obeyed the Swedish court's stay and sought relief only in the bankruptcy proceeding. By attaching Salen's local assets after its declaration of bankruptcy, Victrix attempted to secure a "captive fund" to satisfy the anticipated arbitration award. See Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B., supra, 773 F.2d at 459. We will not aid Victrix's effort to evade the writ of the Swedish bankruptcy court.
 
 
 17
 Deference to the Swedish bankruptcy court is appropriate so long as the attached funds are subjected to the jurisdiction of that court. Salen makes no claim that the funds should be transferred to it. On the contrary, it requests that the funds be transferred to the liquidator to abide the orders of the bankruptcy court. It will then be up to the Swedish court to determine what benefit, if any, Victrix should enjoy from having obtained the London arbitration award and the British judgment and having asserted its claim against the attached funds. The Swedish court can be expected to accord Victrix whatever rights it is entitled to under the Convention, since Sweden is a signatory of the Convention. Having already filed a claim in the Swedish bankruptcy proceeding, Victrix will enjoy at least the same protections and rights as Salen's other creditors.
 
 
 18
 State Law Applicable to Enforcement of the British Judgment. Enforcement of foreign money judgments under New York law is governed by the Uniform Foreign Country Money-Judgments Recognition Act, N.Y.Civ.Prac.L. & R. 5301 et seq. (McKinney 1978) ("the Act"), adopted in 1970 as a codification of New York common law, id. Sec. 5301 commentary at 488. The Act requires a court to enforce a "conclusive" and valid foreign money judgment subject to seven discretionary bases for nonenforcement, N.Y.Civ.Prac.L. & R. 5304(b). Victrix contends that because the bases for non-enforcement do not expressly include conflicting foreign bankruptcy proceedings, the London judgment must be enforced. We disagree. We are satisfied that, under the circumstances of this case, a New York court would extend comity to the Swedish Bankruptcy proceeding and exercise its discretion under N.Y.Civ.Prac.L. & R. 5304(b)(4) to deny enforcement of the London judgment as conflicting with New York's public policy of deferring to foreign bankruptcy proceedings.
 
 
 19
 New York courts recognize the statutory title of an alien trustee in bankruptcy, provided the foreign court had jurisdiction over the bankrupt and the foreign proceeding does not prejudice the rights of New York citizens, impair New York's statutory remedies, or violate the public policies of the state. Clarkson Co., Ltd. v. Shaheen, supra, 544 F.2d at 629; In re Waite, 99 N.Y. 433, 448, 2 N.E. 440, 449 (1885). Particularly in early cases, New York courts frequently declined to recognize involuntary foreign bankruptcy proceedings where rights of local creditors were at stake. See Martyne v. American Union Fire Insurance Co. of Philadelphia, 216 N.Y. 183, 193-94, 110 N.E. 502, 505-06 (1915); Warren Ross Lumber Co. v. Haniel Clark & Son, Inc., 211 A.D. 591, 592-93, 207 N.Y.S. 391, 392 (4th Dep't 1925); Bank of Buffalo v. Vesterfelt, 36 Misc.2d 381, 232 N.Y.S.2d 783 (N.Y. County Ct.1962); see also Pope v. Heckscher, 266 N.Y. 114, 194 N.E. 53 (1934). However, in cases involving claims of foreign creditors, the courts generally defer to foreign proceedings. See, e.g., SNR Holdings, Inc. v. Ataka America, Inc., 54 A.D.2d 406, 408, 388 N.Y.S.2d 909, 911 (1st Dep't 1976). Regardless of the creditor's identity, New York courts will generally recognize foreign judgments and proceedings where the creditor voluntarily submitted to the foreign court's jurisdiction. See, e.g., Phelps v. Borland, 103 N.Y. 406, 412, 9 N.E. 307, 310 (1886); see also In re Waite, supra, 99 N.Y. at 439, 2 N.E. at 442-43 (local debtor who submitted to foreign bankruptcy proceedings is bound by adjudication of foreign court).
 
 
 20
 Applying these principles to the pending case, we conclude that a New York court would recognize the rights of Salen's administrator in bankruptcy. Because both parties are foreign corporations, recognition will not harm the rights of local creditors; indeed, recognition is essential to protect the rights of New York creditors who submitted to the Swedish proceeding and filed their claims against the estate. Even if Victrix were a local creditor, New York courts might nevertheless defer to the Swedish bankruptcy proceeding since Victrix voluntarily submitted to the jurisdiction of that court. Deference is particularly appropriate here where Victrix has ample opportunity to pursue its claim against Salen's estate in the foreign proceeding. We find that because enforcement of the British judgment would conflict with New York's policy of deferring to foreign bankruptcy proceedings, a New York court would use its discretion to refuse to enforce the British judgment. It would therefore dissolve Victrix's attachment and transfer the funds to Salen's trustee in bankruptcy.
 
 
 21
 The Attorney's Fee Award. Victrix also challenges the District Court's assessment of legal fees for wrongful attachment under N.Y.Civ.Prac.L. & R. 6212(b). That provision authorizes a fee award if the defendant succeeds on the merits, Thropp v. Erb, 255 N.Y. 75, 174 N.E. 67 (1930), or "if it is finally decided that the plaintiff was not entitled to an attachment of the defendant's property." N.Y.Civ.Prac.L. & R. 6212(b). We believe that a New York court would assess legal fees for wrongful attachment in the circumstances of this case. Cf. Minskoff v. Fidelity and Casualty Co. of New York, 28 A.D.2d 85, 281 N.Y.S.2d 410 (1st Dep't 1967), aff'd, 23 N.Y.2d 706, 296 N.Y.S.2d 151, 242 N.E.2d 755 (1968) (fee award appropriate because suit dismissed on grounds of forum non conveniens ).
 
 Conclusion
 
 22
 For the foregoing reasons, we affirm the order vacating the attachment and assessing fees and remand to the District Court with directions to enter an order transferring the attached funds to the liquidator for disposition pursuant to subsequent orders of the Swedish bankruptcy court. Salen may recover its appellate costs.
 
 
 
 [1]
 9 U.S.C. Sec. 205 provides:
 Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.
 
 
 [2]
 Federal law pertinent to the Convention is inapplicable because the Convention does not apply to the enforcement of judgments that confirm foreign arbitration awards. See Island Territory of Curacao v. Solitron Devices, Inc., supra, 489 F.2d at 1319; Waterside Ocean Navigation Co., Inc, v. International Navigation Ltd., 737 F.2d 150, 154 (2d Cir.1984)
 
 
 [3]
 Though it is arguable that Victrix's claim to enforce the London arbitration award merged with the British judgment and is no longer independently available, see Island Territory of Curacao v. Solitron Devices, Inc., supra, 489 F.2d at 1318 n. 4, Salen does not advance that argument here. We have previously upheld, without discussion, the confirmation of a London arbitration award by a United States District Court even though the award had already been converted to a judgment by a British court. Waterside Ocean Navigation Co., Inc. v. International Navigation Ltd., supra, 737 F.2d at 154