**BANCO DE SEGUROS DEL ESTADO, Plaintiff,**

v.

**J.P. MORGAN CHASE & CO., JP Morgan Chase Bank, Chemical Overseas Holdings Inc., Dresdner Bank AG, Dresdner Bank Lateinamerika AG, Deutsche Sudamerikanische Bank AG, Credit Suisse First Boston Corporation, Credit Suisse First Boston, Credit Suisse, San Luis Financial and Investments Co. Limited Inc., Carlos A. Rohm, and Jose E. Rohm, Defendants.**

**Raul Oscar Joao, Patricia Jadra Tau, Juan Andres Pacheco, Angel Calabria Mallarini, and Byung Sup Lee Kang, Plaintiffs,**

v.

**J.P. Morgan Chase & Co., JP Morgan Chase Bank, Chemical Overseas Holdings Inc., Dresdner Bank AG, Dresdner Bank Lateinamerika AG, Deutsche Sudamerikanische Bank AG, Credit Suisse First Boston Corporation, Credit Suisse First Boston, Credit Suisse, San Luis Financial and Investments Co. Limited Inc., Carlos A. Rohm, and Jose E. Rohm, Defendants.**

**Nos. 06 Civ. 3702 DAB, 06 Civ. 9401 DAB.**

United States District Court, S.D. New York.

April 9, 2007.

See also 219 Fed.Appx. 83.

Jorge W. Moreira, Moreira Law Firm, PC, New York City, for Plaintiff.

Louis B. Kimmelman, O'Melveny & Myers LLP, Henry Sabath Weisburg, Sherman & Sterlling LLP, New York City, for Defendants.

### MEMORANDUM & ORDER

BATTS, District Judge.

Plaintiff in 06 Civ. 3702(DAB)—Banco de Seguros del Estado ("Banco de Seguros")—is an insurance company wholly owned by the government of Uruguay. Banco de Seguros purchased bonds issued by Banco Comercial, a bank owned directly and indirectly by Defendants. Plaintiffs in 06 Civ. 9401(DAB)—Raul Oscar Joao, Patricia Jadra Tau, Juan Andres Pacheco, Angel Calabria Mallarini, and Byung Sup Lee Kang—are individuals who deposited with, or who purchased bonds issued by Banco Comercial. Plaintiffs in both cases allege that Defendants authorized Banco Comercial to defraud them. Now before this Court in 06 Civ. 3702(DAB) is Defendants Dresdner Bank AG and Credit

Suisse First Boston Corporation's Motion to Dismiss on the ground of forum non conveniens, on the ground of international comity, or on the ground of failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Also before this Court in 06 Civ. 3702(DAB) is Defendants JP Morgan Chase & Co., JP Morgan Chase Bank N.A., and Chemical Overseas Holdings, Inc.'s Motion to Dismiss on the ground of forum non conveniens, or alternatively on the ground of failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Banco de Seguros opposes these Motions, but also requests that in the event the Motions are granted, such granting be conditioned upon Defendants' accepting service of process in, and consenting to the jurisdiction of, the courts of Uruguay. (*See* Pl.'s Mem. of Law at 2, 8; *Network Finance, Inc.*, No. 116905/2004, Order at 17 (Apr. 10, 2006).) Banco de Seguros further requests that any dismissal be conditioned on Defendants' waiver of any statute of limitations defense they did not already have before the commencement of this action, and on Defendants' consenting to the full faith and credit of any judgment that Banco de Seguros obtains in Uruguay. (*See* Pl.'s Mem. of Law at 2, 8; *Network Finance, Inc.*, No. 116905/2004, Order at 17 (Apr. 10, 2006).) The second action—06 Civ. 9401(DAB)—has been stayed pending the resolution of the Motions in the first action. (*See* No.

06 Civ. 9401(DAB), Stipulation and Order, dated Nov. 22, 2006.)

For the reasons contained herein, Defendants' Motions are GRANTED on the ground of forum non conveniens. Because Plaintiffs' Complaint in 06 Civ. 9401(DAB) is similar to the first case in all relevant aspects, that Complaint also shall be dismissed *sua sponte* on the ground of forum non conveniens.

## I. BACKGROUND

The following facts, which are alleged in the Complaint in 06 Civ. 3702(DAB),[2] are assumed to be true for purposes of this Memorandum and Order.

On July 17, 1858, non-party Banco Comercial was incorporated under Uruguayan law, and in 1880, it was registered with the Public Registry of Commerce of Montevideo. (No. 06 Civ. 3702(DAB) Compl. ("Compl.") ¶ 35.) In 1982, Banco Comercial was taken over by the Uruguayan government. (Compl. ¶ 36.) The Uruguayan government assumed Banco Comercial's debts, among other things, to ensure that the bank could fulfill its financial obligations. (Compl. ¶ 36.)

On October 1, 1990, the Uruguayan government agreed to sell Banco Comercial to certain financial entities. According to the Complaint, the Uruguayan government approved the purchase based on the prospective purchasers' reputations as prestigious international financial institutions. (Compl. ¶¶ 61–64.) The prospective pur-

---

**1.** The Court's docket has no record of Defendants Credit Suisse, Credit Suisse First Boston, Deutsch–Südamerikanische Bank AG, Dresdner Bank Lateinamerika AG, San Luis Financial and Investments Co. Limited Inc., Carlos A. Rohm or Jose E. Rohm's having been served with the Complaint in 06 Civ. 3702(DAB). The Court's docket also has no record of Defendants Credit Suisse First Boston, Deutsch–Südamerikanische Bank AG, Dresdner Bank Lateinamerika AG, San Luis Financial and Investments Co. Limited Inc.,

Carlos A. Rohm, and Jose E. Rohm's having been served with the Complaint in 06 Civ. 9401(DAB).

**2.** With the exception of Paragraph 8 in both pleadings, the Complaint in 06 Civ. 9401(DAB) is substantively identical to the Complaint in 06 Civ. 3702(DAB). Paragraph 8 sets forth the identity of the Plaintiffs in the respective cases.

chasers also represented to the Uruguayan government that they would oversee the management of Banco Comercial. (Compl.¶¶ 65–66.)

The Complaint lists the purchasers as follows:

> (1) Chemical Overseas Holdings, Inc., a subsidiary of JP Morgan Chase ...; (2) Credit Suisse First Boston, a subsidiary of Credit Suisse Group ...; (3) Dresdner Lateinamerika, a subsidiary of Dresdner ..., and (4) San Luis Financial and Investment, Co.... San Luis is itself owned by Chemical Overseas Holding, Credit Suisse First Boston, and Dresdner Lateinamerika, and the Rohm brothers, Carlos and Jose Rohm.

(Compl.¶ 37.) The first three of these listed purchasers, along with their listed principals, collectively are referred to as the "Corporate Defendants". Each Corporate Defendant holds shares in the fourth of these listed purchasers—Defendant San Luis Financial and Investment Co. ("San Luis")—and in some of San Luis' subsidiaries. (Compl.¶¶ 12, 15, 21, 22.) Among the San Luis subsidiaries in which Corporate Defendants hold shares are non-parties Compañia General de Negocios Uruguay S.A. ("CGN–SAIFE"), Compañia General de Negocios Virgin Islands ("CGN–SAIV"), Derika Investment NV Curacao, and Comercial Investment Holding Corp. (Curacao) ("CIHC"). (Compl.¶¶ 12, 15, 21.)

The Complaint does not enumerate specifically the principal places of business or the places of incorporation of each Corporate Defendant.[3] Rather, Banco de Seguros makes the general allegation that "Defendants" are licensed and domiciled in New York.[4] (Compl.¶ 32.)

According to the Complaint, the Corporate Defendants authorized Defendant San Luis Financial and Investment, Co. ("San Luis") to manage Banco Comercial. (Compl.¶¶ 39, 150.) San Luis subsequently assigned this authority to Defendants Carlos Rohm and Jose Rohm ("Rohm Defendants"). (Compl.¶¶ 40, 151.) These authorization agreements contain a clause selecting New York as the appropriate forum for disputes arising under them. (Compl.¶ 32.)

Plaintiff Banco de Seguros alleges that: "While [the Corporate Defendants] delegated day to day control of the bank to San Luis and, in turn, to the Rohms, they remained in close contact with those in charge 'on the ground', receiving updates, reports, and giving clearance to Carlos Rohm for his actions." (Compl.¶ 65.) Banco de Seguros further alleges that:

> [Carlos] Rohm has testified that he reported to and checked with the Representative Directors of [Banco Comercial] regularly, assuring that JP Morgan, Credit Suisse, and Dresdner maintained knowledge and control over the activities of the Rohms and [Banco Comercial], through monthly reports, communications, and work groups at [Banco Comercial] checking the accounting of Banco

---

**3.** According to Defendants' papers, JP Morgan Chase & Co. is a Delaware corporation (*see* Kimmelman Dec., Ex. I), JP Morgan Chase Bank, N.A. is a national banking corporation under the laws of the United States (*see* Kimmelman Dec., Ex. J), and Chemical Overseas Holdings, Inc. is a New York corporation (Kimmelman Dec., Ex. K.)

**4.** This allegation, which refers generally to all "Defendants", contradicts averments elsewhere in the Complaint. The allegation cannot refer to San Luis, which the Complaint later describes as a "Panamanian company subject to both the Argentinean and the Uruguayan Government" (*see* Compl. ¶ 22), nor can it refer to individual Defendants Carlos Rohm and Jose Rohm because individuals do not require licenses.

Comercial and reporting back to the Representative Directors. (Compl.¶ 66.) According to Banco de Seguros, Carlos Arocena—Director of Banco Comercial—confirms Carlos Rohm's characterizations. (Compl.¶ 67.)

Banco de Seguros alleges that five categories of fraudulent transactions either were executed by Corporate Defendants directly or were implemented by San Luis and the Rohm Defendants upon Corporate Defendants' authorization. First, Banco de Seguros alleges that Corporate Defendants directed San Luis and the Rohm Defendants to purchase from Banco General de Negocios ("BGN")—an Argentinean commercial bank owned in part by Corporate Defendants (Compl.¶¶ 70–71)—up to $300 million in securities on behalf of Banco Comercial. (Compl.¶ 73.) $14.3 million of those securities allegedly were purchased in the name of Plaintiff Banco de Seguros and other Banco Comercial depositors.[5] (Compl. ¶ 73.) According to the Complaint, the Central Bank of the Republic of Argentina and the Argentinean Electronic Stock Exchange determined in 2002 that BGN had never purchased the securities that it allegedly sold to Banco Comercial. (Compl.¶¶ 79–80.) Banco de Seguros alleges that this lack of bona fide ownership by BGN defrauded it out of funds it had deposited with Banco Comercial.

Second, Banco de Seguros alleges that Banco Comercial granted exceptionally high-risk loans totaling $84,993,949.00 to various corporate entities (Compl.¶ 90), including a company whose board of directors was comprised of employees of BGN (Compl.¶ 95). Banco Comercial also allegedly granted loans to a member of the BGN Board of Directors (Compl.¶ 97), and to an individual officer of Banco Comercial (Compl.¶ 96). According to the Complaint, the Uruguayan Criminal Court determined that a significant number of these loans "were destined, whether documented or not, to speculative operations such as the purchase of shares" of BGN and of companies indirectly owned by the Rohm Defendants. (Compl.¶ 100.) Many of the loans allegedly were never returned to Banco Comercial. (See, e.g., Compl. ¶ 101.) Banco de Seguros alleges that Corporate Defendants helped execute these loans by knowingly allowing them to be granted and by integrating improper loan approval procedures into Banco Comercial's business practice. (Compl.¶¶ 110–111.)

Third, Banco de Seguros alleges that San Luis formed CIHC as its indirect subsidiary for the purpose of making deposits or investments in ING Amsterdam. (Compl.¶¶ 112–13.) Through CIHC and ING Amsterdam, Banco Comercial offered overseas investments as a service to its customers. (Compl.¶ 114.) When customers chose to use this service, they would enter into an agreement with Banco Comercial whereby the latter promised to deposit the customers' money in ING Amsterdam. (Compl.¶ 114.) Banco de Seguros alleges that the investment portfolios for the customers' ING Amsterdam accounts were changed without their knowledge. (Compl.¶¶ 119, 120.) In addition, a significant amount of these customers' ING Amsterdam funds allegedly were transferred to San Luis subsidiaries, which also resulted in substantial losses. (Compl.¶ 121.)

Fourth, Banco Comercial allegedly sold securities to a Uruguayan broker at their future value, who then in turn sold them to

---

**5.** The Complaint in No. 06 Civ. 9401(DAB) alleges that the same types of securities were purchased in the name of the Plaintiffs in that action. (See No. 06 Civ. 9401(DAB), Compl. ¶ 73.)

San Luis at the same price plus a small profit. (Compl.¶¶ 135–37.) Banco de Seguros alleges that because Banco Comercial did not sell the securities at their present face value, the Uruguayan broker was a "strawman" who created an illusion about the value of Banco Comercial's assets. In other words, by indirectly selling securities to its own parent at an inflated value, Banco Comercial is alleged to have presented to its customers an inflated record of its assets. (Compl.¶¶ 137–39.) The Uruguayan broker was later arrested for these transactions. (Compl.¶ 142.)

Fifth, Banco Comercial allegedly siphoned its customers' funds into the funds of CGN–SAIV and CGN–SAIFE—two San Luis subsidiaries—so that Defendants and entities associated with Defendants could, among other things, invest those funds in high-risk ventures. (Compl.¶¶ 143–49.)

Uruguayan authorities first became aware of these alleged fraudulent acts after Argentine authorities issued warrants for the arrest of Carlos Rohm and Jose Rohm in connection with criminal activities committed at BGN.[6] (Compl.¶ 43.) Aware that the Rohm Defendants also were chief executives of Banco Comercial, the Central Bank of Uruguay ("CBU")[7] began investigating Banco Comercial and other entities related to San Luis to determine whether similar illegal transactions had occurred in Uruguay. (Compl.¶ 44, 45.) The investigations revealed evidence that certain of the alleged fraudulent acts had been committed under Banco Comercial's purview, and on February 15, 2002, the CBU reported to the Uruguayan Criminal Court that it had "identified criminally prosecutable irregularities". (Compl.¶ 48.) On May 3, 2002, Corporate Defendants hired a consulting firm to prepare a report on these matters. The report was submitted to Judge Jose Bacaldi in the Criminal Court of Uruguay, 4th term, the judge who had been assigned to investigate the Banco Comercial fraud. (Compl.¶ 51.)

On July 11, 2002, the CBU authorized the decision to release additional shares of Banco Comercial, but prohibited San Luis from being a shareholder of any intermediary financial entity. (Compl.¶ 52.) Two and a half weeks later, Judge Teresita Rodriguez de Mascardi of the Uruguayan Civil Court of 13th Turn ordered a lien on the nominative shares of Banco Comercial owned by San Luis and Corporate Defendants. (Compl.¶ 53.) Judge Rodriguez de Mascardi further enjoined any sale or disposition of San Luis shares. (Compl.¶ 53.)

Meanwhile, in the criminal matter, Judge Bacaldi had appointed accounting experts to submit a report about any financial irregularities associated with Banco Comercial. (Compl.¶ 54.) Upon review of that report, the CBU ordered the dissolution and liquidation of Banco Comercial. (Compl.¶ 54.) Banco de Seguros alleges, however, that by the time of the liquidation, "the majority of Banco Comercial's assets had been fraudulently transferred to other companies owned directly or indirectly by the Defendants and thus the remaining funds were insufficient and the Plaintiffs' [sic] life-savings were lost." (Compl.¶ 55.) On May 18, 2003, Judge

---

6. According to the Complaint, Carlos Rohm was subsequently convicted and is imprisoned in Argentina for these crimes. Jose Rohm has allegedly avoided extradition for these charges, despite an international arrest warrant, and is believed to reside in Florida and/or New York. (Compl.¶ 42.)

7. The CBU is the Uruguayan equivalent of the Federal Reserve Board in the United States. (Compl.¶ 45.)

Bacaldi issued a decision against Carlos Rohm and Jose Rohm. (Compl.¶ 56.)

Banco de Seguros now brings claims for fraud, civil conspiracy, aiding and abetting fraud, and negligence to recover the money it lost as a result of Defendants' alleged acts. A similar suit was filed by other Banco Comercial depositors and investors in New York state court.[8] *Network Finance, Inc., et al. v. JP Morgan, et al.,* No. 116905/2004 (N.Y.Sup.Ct.2004). Justice Karla Moskowitz dismissed *Network Finance* on the ground of forum non conveniens,

> provided that defendants accept service of process and consent to jurisdiction of the courts of Uruguay, waive any statute of limitations defense they did not already have before the commencement of this action and consent to the full faith and credit of any judgment that plaintiffs obtain and pay it and provided that plaintiffs commence the action within 90 days from the date of service of defendants' stipulation upon plaintiffs' counsel.

*Network Finance, Inc.,* No. 116905/2004, Order at 17 (Apr. 12, 2006).[9]

Another group of Banco Comercial customers filed a separate suit against JP Morgan Chase & Co. to recoup their losses. *See Acosta v. JPMorgan Chase & Co.,* 2006 WL 229196 (S.D.N.Y. Jan. 30, 2006). Judge Buchwald of the Southern District of New York dismissed that case on the ground of forum non conveniens, and the Second Circuit affirmed. *Id., aff'd* 2007 WL 689529 (2d Cir.2007).

Banco de Seguros first filed the present suit in New York state court, but the case subsequently was removed to federal court pursuant to 12 U.S.C. § 632.[10] Despite Banco de Seguros' general (and vague) allegations that "[t]he heart of the conspiracy and the 'home office' of the operation to empty Banco Comercial was in New York" (Compl.¶ 31), and that Defendants "utilized money wires to New York, and bank and financial accounts in New York" (Compl.¶ 33), Corporate Defendants move to dismiss this case on the ground of, among other things, forum non conveniens.[11]

## II. DISCUSSION

### A. Forum Non Conveniens Standard

Forum non conveniens, a common law doctrine which the United States Supreme Court imported into the federal courts in *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), permits a federal court to dismiss a case over which it has jurisdiction and in which venue is

---

8. This state case previously was in federal court. Judge Laura T. Swain of the Southern District of New York dismissed the federal claims in that case with prejudice. (*See Network Finance v. J.P. Morgan Chase,* 04 Civ. 129(LTS), Tr., Aug. 25, 2004, at 37–42; *Network Finance v. J.P. Morgan Chase,* 04 Civ. 129(LTS), Order, Sept. 22, 2004.) Judge Swain further declined to exercise supplemental jurisdiction over the remaining state law claims, and dismissed those claims for lack of diversity jurisdiction. (*Network Finance v. J.P. Morgan Chase,* 04 Civ. 129(LTS), Tr., Aug. 25, 2004, at 42–43.) Plaintiffs in that case subsequently filed in New York state court a Complaint based on the same facts,

which is the case by the same name assigned to Justice Moskowitz.

9. Justice Moskowitz similarly fashioned the dismissal of another suit based on the same allegations. *Luis Vargas Garmendia v. Brian O'Neill,* No. 117763/2004, Order at 6, Apr. 12, 2006 (N.Y.Sup.Ct.2004).

10. This Court denied Banco de Seguros' Motion to Remand on July 13, 2006.

11. Because the Court dismisses the Complaint on the ground of forum non conveniens, the Court need not consider the other arguments for dismissal.

otherwise proper when "dismissal would 'best serve the convenience of the parties and the ends of justice.'" *Murray v. British Broadcasting Corp.*, 81 F.3d 287, 290 (2d Cir.1996) (*quoting Koster v. American Lumbermens Mut. Casualty Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947)) The doctrine "presupposes at least two forums in which the defendant is amenable to process"—the chosen federal court on the one hand and either an alternative state court or court of a foreign country on the other [12]—and "furnishes the criteria for choice between them." *Gilbert*, 330 U.S. at 507, 67 S.Ct. 839.

As far as these criteria go, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum." *Piper*, 454 U.S. at 255, 102 S.Ct. 252 (1981). However, the degree of deference accorded the plaintiff's forum choice depends on the residency of the plaintiff, for while, on the one hand, "a plaintiff's choice of forum is entitled to greater deference when the plaintiff has chosen its home forum", *Piper*, 454 U.S. at 255, 102 S.Ct. 252, "the choice of a United States forum by a foreign plaintiff is entitled to less deference." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 71 (2d Cir.2001) (*citing Piper*). Nevertheless, the rule is not so "abrupt or arbitrary" as to give deference to the plaintiff's choice "only when the plaintiff sues in the plaintiff's home district." *Id.* at 72. Instead, the Second Circuit has adopted a "sliding scale" concept of deference, giving "greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons", like convenience, and "diminishing deference" to a plaintiff's forum choice to the extent it was motivated by tactical advantage, i.e., forum shopping. *Id.* at 73. Thus, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the forum of choice and the more it appears that considerations of convenience favor the conduct of the lawsuit in the United States, the more difficult it will be for the defendant to gain dismissal for forum non conveniens." *Id.* at 72.

Beyond the plaintiff's forum choice, the Supreme Court has set out a list of private and public interest factors that a district court must weigh in determining whether forum non conveniens dismissal is proper. The private interest factors relate to the convenience of the litigants themselves and include: (1) the relative ease of access to proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining the attendance of willing, witnesses; (3) possibility of view of premises; (4) enforceability of a judgment if one is obtained; and (5) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839. The public interest factors, meanwhile, include: (1) preventing congestion of the court's docket; (2) the local interest in having localized controversies decided at home; (3) the appropriateness

---

12. The power granted federal courts under the forum non conveniens doctrine is therefore distinct from the federal venue transfer statute, 28 U.S.C. § 1404(a), which permits federal courts to transfer rather than dismiss cases on similar grounds, but only to other federal courts. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981) (specifying that " § 1404(a) transfers are different than dismissals on the ground of forum non conve-

niens" and that "[d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of forum non conveniens"); *Schertenleib v. Traum*, 589 F.2d 1156, 1161 (2d Cir.1978) (noting that "the 'inherent power' of district courts to utilize forum non conveniens still exists in situations ... where section 1404(a) cannot apply because the more ·convenient forum is not a United States district court.").

of trying a case in a forum that is at home with the state law that must govern the case; (4) the avoidance of unnecessary problems in conflict of laws; or in the application of forum law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

■ Because a forum non conveniens inquiry requires flexibility, no one factor "will justify or require either grant or denial of remedy." *Piper*, 454 U.S. at 249–50, 102 S.Ct. 252 (*quoting Gilbert*). However, a defendant's burden with respect to these factors is always high; "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Gilbert*, 330 U.S. at 508, 67 S.Ct. 839; *see also Iragorri*, 274 F.3d at 74–75 (noting that even when a plaintiff's forum choice is entitled to a lesser degree of deference, "the action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable").

### B. *Existence of an Alternative Forum*

■ "The requirement of an alternative forum is ordinarily satisfied if the defendant is amenable to process in another jurisdiction, except in 'rare circumstances' when 'the remedy offered by the other forum is clearly unsatisfactory.'" *Murray*, 81 F.3d at 292 (*quoting Piper*, 454 U.S. at 254 n. 22, 102 S.Ct. 252). In the present case, the Moving Defendants name Uruguay as the appropriate forum. They further suggest that they are amenable to process in Uruguay. Defendants JP Morgan Chase & Co., JP Morgan Chase Bank, NA, and Chemical Overseas Holdings, Inc. aver that they have appeared, "filed numerous answers", and "produced evidence

to support their defenses" in related civil lawsuits in Uruguayan courts. (Mem. of Law of JP Morgan Chase & Co, *et al.* at 8.) Defendants Dresdner Bank AG and Credit Suisse First Boston Corporation similarly assert that they have "appeared and filed answers denying liability in many of [the] Uruguayan cases, and also have filed evidence to support their answers." (Mem. of Law of Dresdner Bank AG and Credit Suisse First Boston Corp. at 7.)

While Moving Defendants' assertion that they have appeared in Uruguayan courts in related suits against them suggests that they may be amenable to process for purposes of this suit, there is no specific documentation on the record which expressly evinces their amenability to process in this particular matter.[13] For this reason, dismissal must be conditioned upon Defendants being amenable or agreeing to submit to the jurisdiction of Uruguay. *See Blanco v. Banco Industrial de Venezuela, S.A.*, 997 F.2d 974, 983–84 (2d Cir.1993) (noting that forum non conveniens dismissals can be "appropriately conditioned to protect the parties opposing dismissal") (citing cases); *Alfadda v. Fenn*, 966 F.Supp. 1317, 1334 (S.D.N.Y.1997) ("To the extent plaintiffs might be concerned that some defendants are not amenable to process in France, the Court will condition its order of dismissal on defendants making themselves amenable to French process."), *aff'd* 159 F.3d 41 (2d Cir.1998).

### C. *Deference Accorded a Plaintiff's Forum Choice*

■ Plaintiff Banco de Seguros is an insurance company wholly owned by the government of Uruguay (Compl.¶ 8), and therefore its forum choice is not afforded

---

**13.** Nor is there anything on the record indicating whether any of the non-served Defendants are amenable to process in Uruguay.

For a list of non-served Defendants, *see* n. 1, *supra*.

the high deference typically afforded to resident plaintiffs. *See Iragorri*, 274 F.3d at 71. The Court thus must examine Banco de Seguros' forum choice using the sliding scale analysis which considers convenience of this forum or lack thereof to parties and witnesses, as well as the possibility that Banco de Seguros' suing here is merely a forum-shopping tactic.

It is apparent that litigating this suit in New York would not be convenient for anyone. Banco de Seguros' only specific allegation in its Complaint which pertains to New York was that a Credit Suisse agent had directed the Rohm Defendants to mail all correspondence, "including periodic reports, financial status reports, 'capital increases', dividend payouts, quarterly Board meetings" to Credit Suisse in Buenos Aires, to George Weiksner of Credit Suisse, to George Goetz, Michael Bacon in New York, and to David Mulford in London. (Compl.¶ 171.) Otherwise, the only alleged connections to New York are averred in vague, uncorroborated terms, e.g., an allegation that Defendants are 'pillars' of the New York financial community (Compl.¶ 33), and an allegation that Defendants utilized money wires and bank accounts in New York to implement the alleged fraud (Compl.¶ 34). Without more, Banco de Seguros makes no indication that New York is a convenient, or even relevant, forum.

On the contrary, nearly every event alleged in the Complaint either occurred in Uruguay, or involved a decision finalized in Uruguay. A significant amount of the evidence is in Spanish and would require translation. (Cerisola Dec. ¶ 13; *see, e.g.,* Cerisola Dec., Exs. D, E, & F.) Moving Defendants' papers strongly suggest that most of the internal corporate documents, and most of the related documents that have been generated by regulators and auditors, are located in Uruguay and Argentina. (Cerisola Decl. ¶¶ 13–15, 17, 31, 34, 37.) Various other civil and criminal matters pertaining to the same alleged events and losses as this case have been proceeding in Uruguayan venues. Litigating this suit in New York, concomitant with the ongoing suits in Uruguay, would be as warranted as carrying coals to Newcastle.[14]

Banco de Seguros' failure to allege any specific conduct by Defendants in New York is suspect, and suggests that its only purpose in bringing suit here is forum-shopping. For these reasons, Uruguay is a significantly more convenient forum than the highly inconvenient forum of New York. Banco de Seguros' choice of New York as its forum merits little, if any, deference.

### D. *Private Interest Factors*

#### (1) *Relative Ease of Access to Proof*

█ The Court also must analyze private interest factors which apply to forum non conveniens dismissals. The first private interest factor is the relative ease of access to proof. In its Motion Papers, Banco de Seguros argues that "the underlying bonds have a significant nexus to New York as the Prospectus for the underlying bonds shows that it was underwritten by the Shareholder banks and are

---

14. For those of generations too young to know this expression, *see* http://www.wisegeek.com/what-is-meant-by-carrying-coals-to-newcastle.htm, which explains:

> The phrase, "carrying coals to Newcastle" means spending an inordinate amount of energy on something useless, fruitless, or redundant. This idiom arose in the 15th century because Newcastle, England was known throughout the country as a major exporter of coal. Therefore, "carrying coals to Newcastle" would do you no good, because there was more coal there than anywhere else.

payable in New York City. The bonds were traded and maintained in New York City, as well." (Pl.'s Mem. of Law in Opp. at 6.) But Banco de Seguros does not specify which bonds are referenced by this argument. Even were all the bonds listed in the Complaint payable in New York City, this fact alone would not mean that the majority of the proof is more easily accessed in New York than in Uruguay. Nearly all the relevant events alleged in the Complaint involve transactions either initiated or culminated in Uruguay. Much of the evidence is in the control of Uruguayan authorities like the BCU, and most of the involved corporations' documents, whether internal or public, are located in Uruguay and Argentina. (Cerisola Decl. ¶¶ 13–15, 17, 31, 34, 37.)

New York's status, as Banco de Seguros describes it, as the "commercial nerve center of the Western business world" (see Pl.'s Mem. of Law at 6) has no relevance on the facts of this case. As Banco de Seguros concedes, "this fact alone would not (nor should it) suggest that this forum [ought to] open its courts to limitless litigation by victims of corporate greed or fraud throughout the world." (Id.) Banco de Seguros goes on to offer no other corroborated explanation for its contention that the evidence in this suit may be accessed easily on a continent other than the one where the alleged frauds occurred. The access to proof factor weighs strongly in favor of an Uruguayan forum.

### (2) Availability of Witnesses

The overwhelming majority of relevant non-party witnesses are in Uruguay. Such witnesses include BCU regulators (see Cerisola Dec. ¶ 18), experts who submitted reports in the related cases proceeding through the Uruguayan courts (see, e.g., Cerisola Dec. ¶ 34), local managers of non-party entities alleged to have participated

in the fraud (see, e.g., Cerisola Dec. ¶ 38), brokers who aided and abetted the alleged fraud (Compl.¶¶ 135–37), and Banco Comercial depositors, including Banco de Seguros itself. See Base Metal Trading SA v. Russian Aluminum, 253 F.Supp.2d 681, 710–12 (S.D.N.Y.2003) (granting forum non conveniens dismissal where majority of non-party witnesses and documents were located in home forum) (cited in Acosta v. JPMorgan Chase & Co., 2006 WL 229196, at *8 (S.D.N.Y. Jan. 30, 2006)). Banco de Seguros does not argue that a single specific witness is located in New York. Accordingly, the availability of witnesses factor weighs heavily in favor of dismissal.

### (3) Possibility of View of Premises

A review of the record suggests that this case will be document-intensive and testimony-intensive. Therefore, this private interest factor bears little relevance. To the extent that a view of any premises would be necessary to the litigation of this case, however, those premises are certain not to be in New York.

### (4) Enforceability of a Judgment if One is Obtained

■ New York law governs actions brought in this state to enforce judgments from foreign countries. Island Territory of Curacao v. Solitron Devices, Inc., 489 F.2d 1313, 1318 (2d Cir.1973). See also In re Union Carbide Corp. Gas Plant Disaster, 809 F.2d 195, 204 (2d Cir.1987). But cf. Victrix S.S. Co., S.A. v. Salen Dry Cargo, A.B., 825 F.2d 709, 712–13 (2d Cir. 1987) (finding that federal arbitration law preempts state law remedies for enforcement of foreign arbitral awards). The law of New York specifically prescribes:

> Except as provided in [N.Y.C.P.L.R. § 5304], a foreign country judgment meeting the requirements of

[N.Y.C.P.L.R. § 5302 [15]] is conclusive between the parties to the extent that it grants or denies recovery of a sum of money. Such a foreign judgment is enforceable by an action on the judgment, a motion for summary judgment in lieu of a complaint, or in a pending action by counterclaim, cross-claim or affirmative defense.

N.Y.C.P.L.R. § 5303. Section 5304 of the New York Civil Practice Law and Rules ("Section 5304") then enumerates certain grounds which prevent enforcement:

(a) A foreign country judgment is not conclusive if:

1. the judgment was rendered under a system which does not provide impartial tribunals or procedures compatible with the requirements of due process of law;

2. the foreign court did not have personal jurisdiction over the defendant.

(b) A foreign country judgment need not be recognized if:

1. the foreign court did not have jurisdiction over the subject matter;

2. the defendant in the proceedings in the foreign court did not receive sufficient notice of the proceedings in sufficient time to enable him to defend;

3. the judgment was obtained by fraud;

4. the cause of action on which the judgment is based is repugnant to the public policy of this state;

5. the judgment conflicts with another final and conclusive judgment;

6. the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; or

7. in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action.

N.Y.C.P.L.R. § 5304.

Because it prescribes a process for enforcement of foreign court judgments, this provision satisfies the fourth private interest factor.[16]

Banco de Seguros does not point to any facts which suggest that even one of Section 5304's grounds for non-enforcement is applicable here. An Uruguayan court would have jurisdiction over the subject matter of this suit (Section 5304(b)(1)) as evidenced by the various other lawsuits based on the same alleged large-scale fraud currently proceeding through the Uruguayan court system. Moving Defendants are on notice of the present suit and therefore, so long as Banco de Seguros properly serves them pursuant to Uruguayan law, they will be notified sufficiently of any suit there (Section 5304(b)(2)). Banco de Seguros also does not point to any contravening settlement agreement or final judgment elsewhere which would prohibit enforcement of an Uruguayan judgment (Sections 5304(b)(5) & (6)), nor does

---

**15.** Section 5302 of the New York Civil Practice Law and Rules ("Section 5302") provides that the action for recognition of foreign country judgments applies to any foreign country judgment "which is final, conclusive and enforceable where rendered even though an appeal therefrom is pending or it is subject to appeal." N.Y.C.P.L.R. § 5302.

**16.** Banco de Seguros argues, however, that if this Court dismisses its suit on the ground of forum non conveniens, such dismissal must be conditioned on Defendants' consent to being bound by the rulings of the Uruguayan judiciary.

264

it aver that any Defendant it already has served here would not be subject to service in Uruguay (Section 5304(a)(2)).[17]

If Banco de Seguros is insinuating that Defendants would be able to circumvent liability under Section 5304(a) by asserting in a later enforcement suit that the Uruguayan tribunal evaded due process requirements, that insinuation is improper. In ruling that a district court's dismissal of a case cannot be conditioned upon a party's consenting to the later enforcement of a foreign country judgment, the Second Circuit observed that:

> The district court's jurisdiction is limited to proceedings before it in this country. Once it dismisses those proceedings on grounds of forum non conveniens it ceases to have any further jurisdiction over the matter unless and until a proceeding may some day be brought to enforce here a final and conclusive [foreign country] money judgment. Nor could we ... impose our due process requirements upon [foreign] courts, which are governed by their laws, not ours. Any denial by the [foreign] courts of due process can be raised ... as a defense to the plaintiffs' later attempt to enforce a resulting judgment against [defendant] in this country.

*In re Union Carbide*, 809 F.2d at 205. What *Union Carbide* makes clear is that speculation about another country's due process requirements is not a proper consideration for a district court.

Banco de Seguros cites *Farmanfarmaian v. Gulf Oil Corp.*, 437 F.Supp. 910, 928 (S.D.N.Y.1977), *aff'd* 588 F.2d 880 (2d Cir. 1978) for the proposition that conditioning

a forum non conveniens dismissal on a defendant's agreeing to certain terms is proper. However, the *Farmanfarmaian* court conditioned the dismissal of that case on the defendants' waiver of any statute of limitations defense "they might have had prior to the initiation of suit in this district", and on the defendants' consent to jurisdiction and submission to service in the foreign jurisdiction. 437 F.Supp. at 928. That court did not condition the dismissal on the defendants' consenting to the enforcement of a foreign judgment here.

Although Moving Defendants need not consent to enforcement of a judgment against them, the Court does conclude that the *Farmanfarmaian* conditions, affirmatively sought by Banco de Seguros in its Opposition papers, are appropriate here. It would be improper for Moving Defendants to have removed this suit to federal court and then to seek its dismissal for forum non conveniens merely as a means to run the statute of limitations clock. It would be equally improper for Moving Defendants to assert that Uruguay is the proper forum, but then decide that it is not subject to jurisdiction or service in that forum. Accordingly, the *Farmanfarmaian* conditions, as adapted in the Conclusion, *infra*, are appropriate for purposes of the present suit.

(5) *Other Practical Problems*

While Banco de Seguros does not enumerate specifically any other practical problems, it does argue that there is a private interest in adjudicating these matters here in light of forum selection clauses, in certain prior agreements. (Pl.'s Mem.

---

17. While this Court presently cannot assess whether a judgment by an Uruguayan court would be procured through fraud (Section 5304(b)(3)), or whether such judgment would be subject to a public policy repugnant to the state of New York (Section 5304(b)(4)), any

speculation that such criteria would be met is wholly unsupported by the record.

Moreover, in finding, *supra*, that Uruguay is not an inconvenient forum, the Court already has determined that the criteria of 5304(b)(7) cannot been met.

of Law at 6.) Banco de Seguros contends that because New York was chosen by Moving Defendants as the forum for disputes arising under their delegation agreements with San Luis and the Rohm Defendants, the present case also should be adjudicated in New York. However, Banco de Seguros was not a party to the delegation agreements and should not be permitted to raise the forum selection clauses in those agreements as a defense to the dismissal of their suit. Banco de Seguros also refers to Moving Defendants' selecting New York as the forum for arbitrating some of their disputes with the Uruguayan government. (Pl.'s Mem. of Law at 6.) That arbitration, however, did not involve any agreement between Banco de Seguros and Moving Defendants to litigate this matter in New York, and therefore is irrelevant to these Motions.

## E. Public Interest Factors

The public's interest also is served best by the adjudication of this suit in Uruguay. Uruguay has a far more significant interest in a case that allegedly imperiled its oldest bank as well as hundreds or more of that country's investors. Permitting this suit to proceed here would countenance a flood of litigation brought by parties the world over who allege that they have been wronged by corporate greed and graft, merely because New York is considered by those parties to be, as Banco de Seguros puts it, the "commercial nerve center of the Western business world". (*See* Pl.'s Mem. of Law at 6.)

Not one of *Gilbert*'s public or private interest factors weighs in favor of keeping this suit in New York. Even affording

Banco de Seguros the proper deference owed to its choice of forum, the *Gilbert* criteria—as well as the potential inconvenience to the court, the parties, and the New York public—cannot permit this suit to stay here.

Accordingly, Moving Defendants' Motions to Dismiss on the ground of forum non convenience are hereby GRANTED.[18]

## F. Leave to Amend

Even when a complaint has been dismissed, permission to amend it "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). "While it is the usual practice upon granting a motion to dismiss to allow leave to replead," *Cohen v. Citibank,* No. 95 Civ 4826, 1997 WL 88378, at *2 (S.D.N.Y. Feb. 28, 1997), a court may dismiss without leave to amend when amendment would be futile. *Oneida Indian Nation of New York v. City of Sherrill,* 337 F.3d 139, 168 (2d Cir.2003) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Banco de Seguros has not alleged any specific fact which would counsel in favor of this case's proceeding through a New York judicial forum, even though it was notified of Moving Defendants' forum non conveniens arguments prior to the filing of its Opposition Memorandum. In light of the numerous related suits currently proceeding through the Uruguayan courts and in light of the forum non conveniens dismissal in this district of a matter based on the same facts, *see Acosta,* 2006 WL 229196, granting Banco de Seguros leave to amend its Complaint so that it may

---

**18.** Because the Court dismisses the case on the ground of forum non conveniens, Moving Defendants' other arguments for dismissal need not be considered.

Moreover, the non-moving Defendants have not been served. However, even had they

been served and even in the more unlikely event that the Court had found that it had personal jurisdiction over them, it would still dismiss the case against them on the ground of forum non conveniens.

allege causes of action which could be tried here would be futile.

### G. *Sua Sponte Dismissal of No. 06 Civ. 9401(DAB)*

The allegations by Raul Oscar Joao, Patricia Jadra Tau, Juan Andres Pacheco, Angel Calabria Mallarini, and Byung Sup Lee Kang in the Complaint from Case No. 06 Civ. 9401(DAB) do not differ in any meaningful way from Banco de Seguros' allegations. The only substantive difference between the two Complaints is the identity of the Plaintiffs. Accordingly, the Complaint in No. 06 Civ. 9401(DAB) is hereby DISMISSED in its entirety. *See Liner v. Goord*, 196 F.3d 132, 134 (2d Cir.1999) (permitting court to dismiss *sua sponte* claims it deems frivolous or when no claim has been stated).

### H. *Rule 11 Sanctions*

Plaintiffs' Counsel more than once has attempted to file cases on behalf of Banco Comercial depositors in a New York court. Plaintiffs' Counsel not only filed both of the cases presently before this Court, but also filed cases before Judge Laura T. Swain of the Southern District of New York and before Justice Karla Moskowitz of the New York Supreme Court.

Should Plaintiffs' Counsel file yet another suit in a federal court in New York, Plaintiffs' Counsel may, upon proper Motion of the appropriate party or parties, be subject to sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure, which prohibits attorneys from presenting claims not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed.R.Civ.P. 11(b)(2). This Court and Justice Karla Moskowitz of the New York Supreme Court have made clear that the law does not permit any case based on the alleged Banco Comercial fraud to proceed in a New York forum. Another court should not be burdened with another futile suit.

### III. CONCLUSION

For the reasons contained herein, Moving Defendants' Motions to Dismiss are GRANTED, and the Complaints in both of the above-captioned actions are DISMISSED, provided that:

1. Moving Defendants accept service of process in, and consent to the jurisdiction of, Uruguay; and

2. Moving Defendants, and any other Defendant already served with either of the Complaints in these two actions, waive any statute of limitations defense they did not already have before the commencement of the action or actions with which they properly have been served.

The Clerk of Court is directed to CLOSE the docket for these two cases. SO ORDERED.